UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRETT GOSSETT,<br><br>                Plaintiff,<br>   v.<br><br>PIERCE COUNTY, and DEPUTY MARC PETERSHAGEN,<br><br>                Defendants. | CASE NO. C20-5639 RJB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(5) and 12(b)(6) ("Motion to Dismiss"). Dkt. 5. The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein. As discussed below, Defendant's Motion to Dismiss should be granted.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 1

## I. FACTUAL BACKGROUND

### A. FACTS[1]

Plaintiff makes a negligence claim and a 42 U.S.C. § 1983 claim alleging violation of the Fourth Amendment (unnecessary and excessive force) against Defendants stemming from a June 24, 2017 arrest conducted by Pierce County Sherriff Deputy Marc Petershagen. Dkt. 1-2. A citizen notified Deputy Petershagen that a person had been seen fleeing into a backyard. Dkt. 1-2, at 3. Deputy Petershagen found Plaintiff in a backyard and ordered him to lay on the ground face down and place his hands behind his back. Dkt. 1-2, at 3. Plaintiff complied by laying prone and placing his hands behind his back. Dkt. 1-2, at 3. Plaintiff did not resist arrest. Dkt. 1-2, at 3. Deputy Petershagen did not ask whether Plaintiff had a permanent injury or disability before touching Plaintiff. Dkt. 1-2, at 3. Deputy Petershagen placed his knee on Plaintiff's back and put his weight onto the knee before handcuffing Plaintiff. Dkt. 1-2, at 3. Plaintiff notified Deputy Petershagen that he had a history of having a broken back and that he had had been injured when Deputy Petershagen put his knee on Plaintiff's back. Dkt. 1-2, at 3. Deputy Petershagen took Plaintiff to a hospital, where Plaintiff was "diagnosed with a strain of muscle and tendon of back wall of thorax." Dkt. 1-2, at 3–4.

On April 27, 2020, Plaintiff filed this action in the Pierce County Superior Court. Dkt. 1-2. On July 1, 2020, Defendants removed the case to federal court. Dkt. 1.

### B. PENDING MOTION

Defendants filed the instant Motion to Dismiss on July 8, 2020. Dkt. 5. Defendants' Motion to Dismiss makes four primary arguments: First, that Plaintiff failed to properly serve the

---

[1] The facts alleged in Plaintiff's complaint are taken as true for purposes of this order on Defendants' Motion to Dismiss only.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 2

summons and complaint. Second, that Pierce County Sherriff's Department is not a proper party to this action. Third, that Deputy Petershagen is entitled to qualified immunity from Plaintiff's claims. Fourth, that Plaintiff has not stated a negligence claim against Defendant Pierce County. Dkt. 5.

Plaintiff filed a response in opposition to Defendants' Motion to Dismiss. Dkt. 8.

Defendants filed a reply in support of the instant Motion to Dismiss. Dkt. 9.

On August 7, 2020, the Court entered an order partially deciding the instant Motion to Dismiss and renoting the remaining issues for consideration on August 21, 2020. Dkt. 10. The order dismissed Defendant Pierce County Sheriff's Department, denied Defendants' request for dismissal due to insufficient service of process, quashed Plaintiff's attempts at service on Deputy Petershagen only, and extended the deadline to August 21, 2020, for Plaintiff to perfect service of process on Deputy Petershagen. Dkt. 10, at 10. On August 19, 2020, Plaintiff filed an affidavit demonstrating service of process on Deputy Petershagen. Dkt. 11. Defendants have not filed anything related to the affidavit, and it appears that service of process is no longer at issue. The two issues remaining are, first, whether Deputy Petershagen is entitled to qualified immunity; and, second, whether Plaintiff stated a claim for negligence. Dkt. 5.

## II. DISCUSSION

### A. STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 3

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

### B. SECTION 1983 GENERALLY

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986). To state a civil rights claim, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982).

### C. QUALIFIED IMMUNITY

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow*, at 815. The existence of qualified immunity generally turns on the objective reasonableness of the official's actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable official could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872–73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Courts have discretion to consider the second *Saucier* factor first. *Pearson,* at 236. As it relates to the second *Saucier* prong, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* at 2156. "Law is 'clearly established' for the purposes of qualified immunity if every reasonable official would have understood that what he is doing violates the right at issue." *Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020) (internal quotation marks and citation omitted). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. Once an official pleads qualified immunity, as Deputy Petershagen has done here, the burden is on the plaintiff to prove two elements: (1) that

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 5

the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct. *Isayeva v. Sacramento Sheriff's Dep't,* 872 F.3d 938, 946 (9th Cir. 2017)

      Here, Plaintiff has not met his burden to show that any alleged violation of Plaintiff's right was clearly established at the time of the alleged misconduct. *See id.* Plaintiff broadly states that "police owe a duty to the public to avoid hurting us" (Dkt. 8, at 6:9), but Plaintiff cites to no case law whatever in support that a clearly established right was violated by Deputy Petershagen. *See* Dkt. 8. Instead, Plaintiff analogizes the facts of the case to

> almost a contractual relationship …. played out in countless westerns. What do we think of the cowboy who guns down a man with his hands in the air? We don't like him. He's not the "good guy." Why? Because you're not supposed to shoot someone who puts his hands up. There is evidence that deputy Petershagen owed Mr. Gossett a personal duty to keep his implicit promise not to do more than cuff Mr. Gossett if he submitted. Deputy Petershagen broke that promise when he inflicted injury on Mr. Gossett while he had his proverbial hands up.

Dkt. 8, at 6.

      Plaintiff's allusion to unspecified countless westerns does nothing to satisfy his burden to show that Deputy Petershagen violated a clearly established right. Plaintiff has identified no case law to support his position that the handcuffing here violated a clearly established right when Deputy Petershagen placed his knee on Plaintiff's back while securing the handcuffs—before Deputy Petershagen was informed that Plaintiff had a prior back injury. *See* Dkt. 8. Nor does Plaintiff identify any case law providing that not asking Plaintiff whether he had a permanent injury or disability before touching and handcuffing him violated a clearly established right. *See* Dkt. 8. Defendants indicate that Deputy Petershagen did not know whether Plaintiff was armed or would continue to flee (see Dkt. 9, at 3), and Plaintiff provides no case law suggesting that Deputy Petershagen's conduct was objectively unreasonable. *See* Dkt. 8.

Therefore, Plaintiff's claims against Deputy Petershagen under 42 U.S.C. § 1983 should be dismissed.

### D. PLAINTIFF'S NEGLIGENCE CLAIM

To prove an action for negligence, a plaintiff must demonstrate that a defendant owed a duty to him, breached the duty, and that the breach proximately caused plaintiff's injury. *Hertog v. City of Seattle,* 138 Wn.2d 265, 275 (1999). Plaintiff must prove each of the following elements by a preponderance of the evidence: (1) duty; (2) breach; (3) injury; and (4) proximate cause. *See, e.g., Hutchins v. 1001 Fourth Ave. Assoc.,* 116 Wn.2d 217 (1991). The threshold determination "is a question of law; this is, whether a duty of care is owed by the defendant to the plaintiff." *Taylor v. Stevens County,* 111 Wn.2d 159, 163 (1988).

"As a general rule, law enforcement activities are not reachable in negligence." *Keates v. City of Vancouver,* 73 Wn. App. 257, 266–67 (1994). The public duty doctrine immunizes police from liability in negligence. *Id.* at 266. "Under the public duty doctrine, '[w]hen the defendant is a public official ... no liability will attach for a public official's negligent conduct unless the plaintiff can show that the duty was owed to [him] rather than to the general public.'" *Lawson v. City of Seattle,* No. C12-1994-MAT, 2014 WL 1593350 (W.D. Wash. Apr. 21, 2014) (*quoting Donaldson v. City of Seattle,* 65 Wn. App. 661, 666, 831 P.2d 1098 (1992). "[W]hile it is true that a municipality owes a general duty to all its citizens to avoid the use of excessive force when effectuating an arrest, it cannot be said that they owe[ Plaintiff] a specific duty." *Pearson v. Davis,* No. C06-5444-RBL, 2007 WL 3051250 (W.D. Wash. Oct. 17, 2007).

Plaintiff's negligence claims are barred by the public duty doctrine because Deputy Petershagen is a law enforcement officer and Plaintiff has not identified any duty specifically owed to him or an exception to the public duty doctrine.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 7

### III.  ORDER

Therefore, it is hereby **ORDERED** that:

- The portions of Defendants' Motion to Dismiss (Dkt. 5) at issue in this order are **GRANTED** as follows:
    - Plaintiff's 42 U.S.C. § 1983 claim against Deputy Petershagen is **DISMISSED;**
    - Plaintiff's negligence claim against Defendants is **DISMISSED;**
- Plaintiff's claims against Defendants are **DISMISSED,** and this case is **CLOSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 27th day of August, 2020.

*Robert J. Bryan* (signature)

ROBERT J. BRYAN
United States District Judge