EXHIBITS A, B and C
are video files submitted via thumb drive

EXHIBIT D

***Black Lives Matter Seattle-King County, et al. v. City of Seattle***
Exhibit D to the Declaration of Robert L. Christie

Index to Video Compilations (Exhibits A – C)

| August 26, 2020 Video Compilation – EXHIBIT A | | |
|---|---|---|
| **Video Source** | **Start Time** | **End Time** |
| **Ivanov 2020-08-26_2129**: Demonstrator Cars Parked in Roadway | 00:00:39 | 00:07:21 |
| **Murphy 2020-08-26_2130** | 00:07:22 | 00:10:28 |
| **Ivanov 2020-08-26_2129**: Demonstrators Have Moved into Roadway and Officers Make First Push West on Roanoke | 00:10:29 | 00:11:56 |
| **Ivanov 2020-08-26_2129**: Officers Make Second Push West on Roanoke | 00:11:57 | 00:14:37 |
| **Ivanov 2020-08-26_2129**: Arrest team moves into crowd to arrest laser pointer suspect | 00:14:38 | 00:17:04 |
| **Bourdon 2020-08-26_2217** | 00:17:05 | 00:20:05 |
| **Bourdon 2020-08-26_2217**: Officers make first push west on Roanoke and crowd is warned beforehand | 00:20:06 | 00:32:07 |
| **Bourdon 2020-08-26_2217**: Officers make second push west on Roanoke. | 00:32:08 | 00:34:34 |
| **Bourdon 2020-08-26_2217**: Officers move into crowd to arrest laser pointer suspect | 00:34:35 | 00:39:29 |
| **Bourdon 2020-08-26_2217**: Officers move the crowd north on Harvard – Officer Bourdon OC at male trying to de-arrest female suspect | 00:39:30 | 00:40:12 |
| **Bourdon 2020-08-26_2217**: Officer Claxton deploys blast ball at suspect throwing objects at police – blast ball bounces off of shield and detonates in police line | 00:40:13 | 00:41:09 |
| **Claxton 08-26-2020_2216**: Deployment of blast ball on Harvard | 00:41:10 | 00:42:06 |
| **Waldorf 08-26-2020_2150**: Officers make the first push west on Roanoke – demonstrators assault Sgt. Waldorf and other officers – Sgt. Waldorf deploys OC spray (not visible due to umbrellas) | 00:42:07 | 00:55:00 |
| **Waldorf 08-26-2020_2150**: Officers make second push west on Roanoke – demonstrators shove umbrellas into officers | 00:55:01 | 00:57:01 |
| **Waldorf 08-26-2020_2150**: Sgt. Waldorf organizes arrest team for laser pointer suspect | 00:57:02 | 1:03:37 |

| | | |
|---|---|---|
| **Waldorf 08-26-2020_2150**: Officers move the crowd north on Harvard | 1:03:38 | 1:04:52 |
| **Waldorf 08-26-2020_2150**: Officer Claxton's blast ball detonates | 1:04:53 | 1:05:50 |
| **McKee 08-26-2020_2217** | 1:05:51 | 1:06:50 |
| **McKee 08-26-2020_2217**: Arrest team moves in on laser pointer suspect and Officer McKee deploys OC (not visible due to umbrellas) and arrests suspect | 1:06:51 | 1:08:56 |
| **Pirak 08-26-2020_2215**: Another view of the push north on Harvard, Officer Bourdon's OC burst, and Officer Claxton's blast ball deployment | 1:08:57 | 1:09:39 |
| **Page 08-26-2020_2226**: Officer Claxton's deployment of blast ball on Harvard | 1:09:40 | 1:10:34 |
| **Todorov 08-26-2020_2217**: First push west on Roanoke and Sgt. Waldorf's OC bursts | 1:10:35 | 1:11:16 |
| **Todorov 08-26-2020_2217**: Second push west on Roanoke | 1:11:17 | 1:12:04 |
| **Todorov 08-26-2020_2217**: Arrest of laser pointer suspect and Officer McKee's OC bursts | 1:12:05 | 1:13:07 |
| **Todorov 08-26-2020_2217**: Push north on Harvard | 1:13:08 | 1:16:50 |
| **Washington 08-26-2020**: Officer Washington deploys OC at demonstrators who refuse to move back and grab officer's baton during second push west on Roanoke | 1:16:51 | 1:18:01 |
| **Verhaar 08-26-2020_2217**: Second push west on Roanoke and Officer Washington's OC burst | 1:18:02 | 1:18:42 |
| **Verhaar 08-26-2020_2217**: Arrest of laser pointer suspect and demonstrators trying to de-arrest others | 1:18:43 | end |

| September 7, 2020 Video Compilation – EXHIBIT B | | |
|---|---|---|
| Video Source | Start Time | End Time |
| **SPOG Surveillance Video Channel 16**: Plaintiff Alexandra Chen and other members of the crowd begin placing bags in front of the fence at SPOG in the lower left-hand corner of the video. | 00:01:23 | 00:03:42 |
| **SPOG Surveillance Video Channel 16**: Member of the crowd begins throwing objects at SPD officers. | 00:03:43 | 00:04:10 |
| **SPOG Surveillance Channel I**: Ms. Chen and other members of the crowd drop bags in front of the fence in the lower left-hand corner of the video. A few moments later, another member of the crowd takes the same material and throws it over the fence directly in front of the SPOG building. | 00:04:11 | 00:09:00 |
| **SPOG Surveillance Channel I**: As SPD makes its push to arrest the suspect with a Molotov cocktail, another member of the crowd, lower left corner (and depicted earlier), begins throwing objects towards the officers. | 00:09:00 | 00:09:51 |
| **SPOG Surveillance Channel I**: As SPD directs the crowd back to establish a line, providing officers with space to try and arrest the Molotov cocktail suspect, a member of the crows steps forward, encroaching on officers. Sgt. Didier deploys OC spray. Chen rushes at the individual and officers. She is then sprayed as well. | 00:09:52 | 00:11:03 |
| **SPOG Surveillance Video Channel 9**: Another angle of bags being thrown over fence, initial SPD move into crowd, initial pepper spray, and Chen rushing in. | 00:11:03 | 00:12:34 |
| **SPOG Surveillance Video Channel 10**: The crowd marches toward SPOG. Chen and other members of the crowd begin piling up garbage along fence line. An individual can be seen removing a fence post from its concrete support block. Numbered cars begin to organize and block 4th Ave. South. | 00:12:34 | 00:18:38 |
| **SPOG Surveillance Video Channel 13**: Numbered cars begin to organize in a line to block 4th Ave. S. The crowd gathers with umbrellas and shields along front line. SPD beings its push to arrest the suspect with the Molotov cocktail. A member of the crowd discharges a fire extinguisher at the officers. | 00:18:38 | 00:22:56 |

| | | |
|---|---|---|
| **Didier 2020-09-07_1821**: Sgt. Didier's BWV shows his bike squad making the initial push to arrest the suspect with the Molotov cocktail. He deploys targeted OC spray at two individuals who fail to comply with the order to move back and an individual in red who threw projectiles at officers. | 00:23:08 | 00:24:30 |
| **Chen Video Submitted by Plaintiffs**: Showing same sequence of events. | 00:24:31 | 00:25:34 |
| **Didier 2020-09-07_1821**: Sgt. Didier orders the arrest of a suspect who threw projectiles at officers and continues the push northbound on 4th Ave. S. Blast balls and OC spray are targeted at specific imminent threats to officers. Dispersal orders can be heard throughout the push. | 00:25:35 | 00:33:26 |
| **Didier 2020-09-07_1821**: A Molotov cocktail is thrown at officer from the crowd, off frame to the right. A dispersal order is given and the crowd is turned east. Blast balls and OC spray are deployed. | 00:33:27 | 00:35:48 |
| **Kellet 2020-0907_1824**: Officer Kellet is part of the team that is pushing the crowd north on 4th Ave. S. OC spray is deployed as specific imminent threats within the crowd. Kellet is hit with a large rock and deploys OC spray at the suspect. | 00:35:49 | 00:39:09 |
| **Kellet 2020-0907_1824**: Officer Kellet observes a suspect wanted for throwing an incendiary device at East Precinct on Sept. 1st and moves in to arrest him. | 00:37:34 | 00:39:09 |
| **Doaks 2020-09-07_1822**: Officer Doaks participates in identifying suspect from prior incendiary attack on East Precinct. | 00:39:10 | 00:40:33 |
| **Doaks 2020-09-07_1822**: Someone discharges a fire extinguisher at the officers. | 00:40:34 | 00:41:59 |
| **Doaks 2020-09-07_1822:** Move into crowd to seize suspect that is being shielded by his companions. | 00:42:00 | 00:42:38 |
| **Sylvester 2020-09-07_1821:** The push northbound on 4th Ave. S. Blast balls and OC spray deployed at specific imminent threats in the crowd, including projectiles thrown at officers. His BWV shows a woman throwing traffic cones at officers. Officer Bonet, next video, deploys less lethal force. | 00:42:39 | 00:43:29 |

| | | |
|---|---|---|
| **Bonet 2020-09-07_1823:** Deploys five rounds from his FN303 less lethal at woman throwing cones at officers. Capt. Allen can be heard in background giving orders to disperse. | 00:43:30 | 00:45:16 |
| **Eastman 2020-09-07_1821:** SPD makes the initial push to arrest the suspect with the Molotov cocktail. A member of the crowd discharges a fire extinguisher at officers. OC spray is deployed at specific imminent threats. | 00:45:17 | 00:45:48 |
| **Rich Smith Twitter Video:** Twitter video of crowd member deploying fire extinguisher at officers. | 00:45:49 | 00:47:17 |
| **Eastman 2020-09-07_1821** | 00:47:18 | 00:49:10 |
| **Pratt 2020-09-07_1821:** SPD makes the initial push to arrest the suspect with the Molotov cocktail. Fire extinguisher discharged at officers. | 00:49:11 | 00:49:55 |
| **Sylvester 2020-09-07_1821:** The push continues northbound. Officers plan arrest of suspect as Cpt. Allen continues to issue dispersal orders. A Molotov cocktail is thrown at officers from the crowd. | 00:49:56 | 00:51:17 |
| **Flick 2020-09-07_1821:** Part of initial move into crowd. As officers move north an IED is thrown at officers. Blast balls are deployed in response to this specific threat. Cpt. Allen continues to issue dispersal orders and officers work to turn the crowd easterly. | 00:51:18 | 00:55:20 |
| **Ziemer 2020-09-07_1821:** As part of initial push into crowd the officer is struck with a pipe while making an arrest. The push continues northbound on 4th Ave. S. Cpt. Allen continues to issue dispersal orders. A water bottle and IED are thrown at officers from the crowd. Then a Molotov cocktail is thrown at officers. Blast balls are deployed in response to this specific imminent threat. | 00:55:21 | 00:57:01 |
| **Ziemer 2020-09-07_1821:** Molotov cocktail thrown at officers. | 00:57:02 | 00:58:25 |
| **Dorr 2020-09-07_1822:** SPD makes initial push to arrest the suspect with the Molotov cocktail. Fire extinguisher deployed at officers. OC spray deployed at specific imminent threats. | 00:58:26 | 00:59:48 |
| **Dorr 2020-09-07_1822:** The crowd is directed to move north on 4th Ave. S. | 00:59:49 | 01:05:20 |

| | | |
|---|---|---|
| **Didier 2020-09-07_1821:** Sgt. Didier leads his team as crowd is directed east and then north with continuing efforts to enforce dispersal order. | 01:05:21 | 01:06:48 |
| **Didier 2020-09-07_1821:** Sgt. Didier and his team turn the crowd north continuing to enforce dispersal order. | 01:06:49 | 01:09:54 |
| **Didier 2020-09-07_1821:** Sgt. Didier moves to block access onto I-5. | 01:09:55 | 01:10:59 |

| September 23, 2020 Video Compilation – EXHIBIT C | | |
|---|---|---|
| **Video Source** | **Start Time** | **End Time** |
| **Vaca 2020-09-23_2040**: Earlier portions of Sept. 23 demonstration | 00:00:25 | 00:11:10 |
| **Hay 2020-09-23_2040**: Earlier portion of Sept. 23 demonstration | 00:11:11 | 00:14:21 |
| **Hay 2020-09-23_2244**: Officers resting inside East Precinct | 00:14:22 | 00:14:46 |
| **Keller 2020-09-23_2259**: Crowd control after suspect threw firework into East Precinct | 00:14:47 | 00:23:15 |
| **Pratt 2020-09-23_2245**: Attempt to arrest suspect immediately after firework thrown into East Precinct | 00:23:16 | 00:24:29 |
| **Binder 2020-09-23_2258**: During crowd control outside of East Precinct, crowd warned that pepper spray would be used if they did not move back. | 00:24:30 | 00:24:43 |
| **Plaintiffs' video**: http://twitter.com/richsssmith/status/1309011578705137664 | 00:24:44 | 00:25:20 |
| **Jimenez 2020-09-23_2258**: During crowd control outside East Precinct officer is struck with metal baseball bat | 00:25:21 | 00:26:27 |
| **Twitter video**: https://twittter.com/stillgray/status/1309064626756345860?lang=en Officer Jimenez getting struck in the head with a cone and then a metal bat | 00:26:28 | 00:27:09 |
| **Mattson 2020-09-23_2336**: Crowd approaching officers | 00:27:10 | 00:29:11 |
| **Keller 2020-09-23_2340**: After dispersal orders given, attempt to clear area around fires and continued attempt to disperse the crowd | 00:29:12 | 00:47:40 |
| **Eastgard 2020-09-23_2337**: After dispersal orders given, attempt to clear area around fires and continued attempt to disperse crowd | 00:47:41 | 00:52:22 |
| **Loux 2020-09-23_2340**: After dispersal orders given, attempt to clear area around fires and continued attempt to disperse crowd | 00:52:23 | 00:53:22 |
| **Coolidge 2020-09-23_2343**: Less lethal munition deployment | 00:53:23 | 00:57:01 |
| **Baldwin 2020-09-23_2340**: Another angle of less lethal munition deployment at man using umbrella shaft as a weapon following protestor IED | 00:57:02 | 00:58:51 |
| **Plaintiffs' Twitter video** shows assault on officer with umbrella shaft before munitions deployed: https://twitter.com/richsssmith/status/1309041882929008642 | 00:58:52 | 00:59:23 |

| | | |
|---|---|---|
| **Baldwin 2020-09-07_2340** | 00:59:24 | 01:01:19 |
| **Mattson 2020-09-23_2336**: Officer response to fires and continued attempts to disperse crowd | 01:01:20 | 01:17:18 |
| **Hay 2020-09-23_2340**: After dispersal order given, attempt to clear area around fire and continued attempts to disperse crowd | 01:17:19 | 01:35:39 |
| **Pratt 2020-09-23_2337**: After dispersal orders given, attempts to clear area around fires and continued attempts to disperse crowd | 01:35:40 | end |

EXHIBIT E

### *Black Lives Matter Seattle-King County, et al. v. City of Seattle*
Exhibit E to the Declaration of Robert L. Christie
List of City of Seattle's Evidence Submitted in Opposition to Plaintiffs' Motion for Contempt
Organized by Date and Subject Matter

**The City's Actions, Instructions, and Policies Related to Implementation of Court's Orders**
1. Declaration of David Puente, filed as Exhibit I to Christie Decl.
2. Declaration of Ghazal Sharifi, filed as Exhibit J to Christie Decl.
3. Declaration of Bryan Grenon, filed as Exhibit L to Christie Decl.
4. Declaration of John Brooks, filed herewith
5. Declaration of Captain Matt Allen, filed herewith
6. Declaration of Assistant Chief Lesley Cordner, filed herewith

August 26, 2020 Demonstration

**August 26 Demonstration: Use of Chemical Irritants**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits A(2), A(3), A(4), A(5), A(6), A(7)
3. Bourdon 2020-08-26_2217
4. Waldorf 08-26-2020_2150
5. McKee 08-26-2020_2217
6. Pirak 08-26-2020_2215
7. Todorov 08-26-2020_2217
8. Washington 08-26-2020
9. Verhaar 08-26-2020_2217

**August 26 Demonstration: Use of Blast Balls**
1. Declaration of John Brooks, Exhibit D
2. Declaration of Lesley Cordner, Exhibit A(1)
3. Bourdon 2020-08-26_2217
4. Claxton 08-26-2020_2216
5. Waldorf 08-26-2020_2150
6. Pirak 08-26-2020_2215
7. Page 08-26-2020_2226

September 7, 2020 Demonstration

**September 7 Demonstration: Activity re Initial Attempt to Arrest Outside of SPOG**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(2), B(5),B(6), B(11), B(12), B(13), B(14), B(15), B(16), B(17), B(19), B(22), B(23), B(25), B(26), B(27), B(28), B(29), B(30), B(32), B(33), B(34), B(35), B(36), B(38), B(39)
3. Didier 2020-09-07_1821
4. Eastman 2020-09-07_1821

5. Pratt 2020-09-07_1821
6. Flick 2020-09-07_1821
7. Ziemer 2020-09-07_1821
8. Dorr 2020-09-07_1822

**September 7 Demonstration: Activity After Dispersal Orders Given**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(2), B(6), B(7), B(10), B(11), B(13), B(15), B(18), B(19), B(23), B(26), B(28), B(39)
3. Didier 2020-09-07_1821
4. Kellet 2020-0907_1824
5. Doaks 2020-09-07_1822
6. Sylvester 2020-09-07_1821
7. Bonet 2020-09-07_1823
8. Ziemer 2020-09-07_1821
9. Dorr 2020-09-07_1822

**September 7 Demonstration: Use of Chemical Irritants**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(3), B(4), B(5), B(6), B(8), B(13), B(15), B(16), B(17), B(19), B(22), B(25), B(26), B(27), B(29), B(34), B(38), B(39)
3. Didier 2020-09-07_1821
4. Kellet 2020-0907_1824
5. Ziemer 2020-09-07_1821
6. Dorr 2020-09-07_1822
7. Eastman 2020-09-07_1821
8. Sylvester 2020-09-07_1821

**September 7 Demonstration: Use of Blast Balls**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(1), B(6), B(7), B(10), B(11), B(12), B(14), B(16), B(17), B(18), B(39)
3. Didier 2020-09-07_1821
4. Flick 2020-09-07_1821
5. Ziemer 2020-09-07_1821
6. Sylvester 2020-09-07_1821

**September 7 Demonstration: Use of FN303 Rounds Containing OC Powder**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibit B(2)
3. Bonet 2020-09-07_1823
4. Sylvester 2020-09-07_1821

**September 7 Demonstration: Members of Crowd Seen Throwing or Possessing Molotov Cocktails/Combustible Materials/IEDs/Gasoline**

1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(1), B(2), B(4), B(5), B(6), B(7), B(8), B(10), B(13), B(15), B(16), B(17), B(18), B(19), B(23), B(26), B(27), B(29), B(32), B(34), B(35), (38)
3. SPOG Surveillance Channel 1
4. SPOG Surveillance Channel 9
5. SPOG Surveillance Channel 10
6. SPOG Surveillance Channel 16
7. Flick 2020-09-07_1821
8. Ziemer 2020-09-07_1821
9. Dorr 2020-09-07_1822
10. Didier 2020-09-07_1821
11. Sylvester 2020-09-07_1821

**September 7 Demonstration: Members of Crowd with Projectiles including Rocks and Sticks**

1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(1), B(2), B(4), B(5), B(6), B(7), B(8), B(10), B(13), B(14), B(16), B(17), B(18), B(19), B(22), B(23), B(25), B(26), B(27), B(38), B(39)
3. SPOG Surveillance Channel 1
4. SPOG Surveillance Channel 16
5. Ziemer 2020-09-07_1821
6. Kellet 2020-0907_1824
7. Didier 2020-09-07_1821
8. Sylvester 2020-09-07_1821
9. Bonet 2020-09-07_1823
10. Flick 2020-09-07_1821

**September 7 Demonstration: Members of Crowd with Chemical Irritants (Smoke/Bear Mace/Fire Extinguisher)**

1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(1), B(2), B(4), B(6), B(13), B(15), B(16), B(17), B(18), B(22), B(23), B(25), B(30), B(33), B(38), B(39)
3. SPOG Surveillance Video Channel 13
4. Doaks 2020-09-07_1822
5. Eastman 2020-09-07_1821
6. Pratt 2020-09-07_1821
7. Dorr 2020-09-07_1822
8. Didier 2020-09-07_1821

**September 7 Demonstration: Members of Crowd Engaging in De-Arrest Tactics**

1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(3), B(5), B(8), B(10), B(11), B(12), B(19), B(22), B(25), B(26), B(28), B(39)

3. Doaks 2020-09-07_1822
4. Kellet 2020-0907_1824
5. Pratt 2020-09-07_1821
6. Eastman 2020-09-07_1821
7. Ziemer 2020-09-07_1821
8. Flick 2020-09-07_1821
9. Dorr 2020-09-07_1822

**September 7 Demonstration: Arrest of Suspects involved in East Precinct Arson on 9/1/20**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits B(26), B(27), B(28), B(40)
3. Doaks 2020-09-07_1822
4. Kellet 2020-0907_1824

September 22, 2020 Demonstration

**September 22 Demonstration: Use of Blast Balls**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibit C(1)

September 23, 2020 Demonstration

**September 23 Demonstration: Use of Chemical Irritants**
1. Declaration of Captain Matt Allen
2. Declaration of Lesley Cordner, Exhibits D(2), D(5), D(6), D(11), D(13), D(19)

**September 23 Demonstration: Use of Blast Balls**
1. Declaration of Captain Matt Allen
2. Declaration of Leslie Cordner, Exhibits D(1), D(4), D(7), D(8), D(9), D(11), D(12), D(15), D(19)

**September 23 Demonstration: Use of FN303 Rounds Containing Yellow Paint (No OC)**
1. Declaration of Captain Matt Allen
2. Declaration of Lesley Cordner, Exhibit D(3)
10. Coolidge Axon Body 2 ending in 2343
11. Keller Axon Body 2 ending in 2340
12. Baldwin Axon Body 3 ending in 2340

**September 23 Demonstration: Instances of Members of the Crowd with IEDs and/or Chemical Agents**
1. Declaration of John Brooks
2. Declaration of Lesley Cordner, Exhibits D(1), D(3), D(5), D(6), D(7), D(8),  D(11), D(12), D(16), D(17)

EXHIBIT F
is a video file submitted via thumb drive

EXHIBIT G

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| THE STATE OF WASHINGTON, ) | |
| Plaintiff, ) | |
| v. ) | No. 20-C-07403-5 SEA |
| ) | 20-C-07404-3 SEA |
| JACOB BENNET GREENBURG, ) | |
| DANIELLE E MCMILLAN ) | INFORMATION |
| AND EACH OF THEM, ) | |
| Defendant. ) | |
| ) | |

I, Daniel T. Satterberg, Prosecuting Attorney for King County in the name and by the authority of the State of Washington, do accuse JACOB BENNET GREENBURG AND DANIELLE E MCMILLAN of the following crimes, which are of the same or similar character, and which are based on the same conduct or a series of acts connected together or constituting parts of a common scheme or plan: **Attempted Arson In The First Degree, Assault In The First Degree, Reckless Burning In The First Degree**, committed as follows:

**Count 1  Attempted Arson In The First Degree**

That the defendants JACOB BENNET GREENBURG AND DANIELLE E MCMILLAN and each of them in King County, Washington, on or about September 1, 2020, did knowingly and maliciously attempt to cause a fire or explosion located at Seattle Police Department - East Precinct,  1519 12th Ave., Seattle, which fire or explosion (a) was manifestly dangerous to any human life, including firemen, and (c) was in a building in which there was at that time a human being who was not a participant in the crime. Attempt, as used in the above charge, means that the defendants committed an act which was a substantial step towards the commission of the above described crime with the intent to commit that crime.

Contrary to RCW 9A.28.020 and 9A.48.020(1)(a) and (c), and against the peace and dignity of the State of Washington.

INFORMATION - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104
(206) 296-9000  FAX (206) 296-0955

**Count 2  Assault In The First Degree**

That the defendant JACOB BENNET GREENBURG in King County, Washington, on or about September 23, 2020, with intent to inflict great bodily harm, did assault Officer Jose Jimenez with a deadly weapon and force and means likely to produce great bodily harm or death, to-wit: striking Officer Jose Jimenez in the head with a metal baseball bat;

Contrary to RCW 9A.36.011(1)(a), and against the peace and dignity of the State of Washington.

And further do accuse the defendant, JACOB BENNET GREENBURG at said time of being armed with a deadly weapon, to-wit: a metal baseball bat, under the authority of RCW 9.94A.825 and 9.94A.533(4).

**Count 3  Reckless Burning In The First Degree**

That the defendant JACOB BENNET GREENBURG in King County, Washington, on or about September 26, 2020, did knowingly cause a fire and explosion thereby recklessly damaging trash canisters and dumpsters, located at or near the intersection of E Pine St and 11th Ave, Seattle, in said county and state;

Contrary to RCW 9A.48.040, and against the peace and dignity of the State of Washington.

DANIEL T. SATTERBERG
Prosecuting Attorney

By:

Karissa L. Taylor, WSBA #31563
Senior Deputy Prosecuting Attorney

INFORMATION - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104
(206) 296-9000  FAX (206) 296-0955

1

2

CAUSE NO.  20-C-07403-5 SEA

3

CAUSE NO.  20-C-07404-3 SEA

4

PROSECUTING ATTORNEY CASE SUMMARY AND REQUEST FOR BAIL AND/OR
CONDITIONS OF RELEASE

5

The State incorporates by reference the Certification for Determination of Probable Cause

6

prepared by Detective Stephen Knapp of the Seattle Police Department for case number 2020-

7

277818.

8

The State incorporates by reference the Certification for Determination of Probable Cause

9

prepared by Detective Aaron Dalan of the Seattle Police Department for case numbers 2020-

10

277818, 2020-256129, and 2020-275320.

11

12

The  Certifications for Determination of Probable Cause in this case demonstrate that the

13

defendants have spent their time this fall plotting various assaults and fire bombings on police

14

officers.  Communications between the two co-defendants show a high degree of sophistication

15

and planning for their attacks, from identifying targets (Seattle Police Officer's Guild, East

16

Precinct), itemizing the needs for set numbers of Molotov Cocktails, calculating expected loss

17

for failed bombs, and where to obtain supplies. The communications also show that defendants

18

discussed how to destroy evidence of their attack plans.

19

20

Relevant to this court's assessment of a likelihood of committing violent offenses is the

21

disturbing nature in which the defendants seem to revel in their attacks and injuries caused to

22

public servants.  There is discussion of Molotov cocktail tattoos to memorialize their attacks and

23

sharing news articles of their criminal activities with pride.  The discussion related to the attack

24

Prosecuting Attorney Case
Summary and Request for Bail
and/or Conditions of Release - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104
(206) 296-9000  FAX (206) 296-0955

on Officer Jimenez, with a metal bat, is particularly horrific.  The defendants express being

proud of Greenburg for this assault.  But for luck and chance, Officer Jimenez' helmet saved his

life.  Defendant Greenburg's communications reflect not only a callous disregard for Officer

Jimenez' life, but also a disturbing remorse that the officer was wearing a helmet when

Greenburg hit him in the head with a deadly weapon.   Greenburg also made statements about

plans to commit future acts of violence, such as "**can we like pls slit every spd throat".**

Because of the defendant's ongoing actions, the State believes the defendants are likely to

commit violent offenses, specifically against law enforcement officers, should this court not

order bail in the amount requested.


**Jacob Bennet Greenburg**

Pursuant to CrR 2.2(b)(2)(i) and (ii), the State requests that bail be set at $750,000.00, based on

the likelihood that the defendant will fail to appear in response to a summons and that he may

commit a violent offense.  The defendant has not had a first appearance hearing on counts 1 and

2, the class A violent offenses he is now charged with, but has had a first appearance on count 3,

the reckless burning charge.  At the time of that hearing, the incident was still under

investigation.  Probable cause was found for the crime of Arson in the Second Degree and bail

was set at $20,000.00, and the defendant was released at second appearance on that count.   In

addition to the No Contact with the victim officer of Count 2, the State also requests no contact

with the Seattle Police Department East Precinct.  Should the defendant be able to post on the

$750,000.00, the State requests Electronic Home Monitoring with GPS on top of the bond

amount.   The defendant has no known criminal history.

Prosecuting Attorney Case
Summary and Request for Bail
and/or Conditions of Release - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104
(206) 296-9000  FAX (206) 296-0955

**Danielle E McMillan**

Pursuant to CrR 2.2(b)(2)(i) and (ii), the State requests that bail be set at $100,000.00, based on

the likelihood that the defendant will fail to appear in response to a summons and that she may

commit a violent offense. No first appearance has been held.  Defendant McMillan has the

following criminal conviction history: ██████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████

Signed and dated by me this 16th day of October, 2020.

_____

Karissa L. Taylor, WSBA #31563
Senior Deputy Prosecuting Attorney

Prosecuting Attorney Case
Summary and Request for Bail
and/or Conditions of Release - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104
(206) 296-9000  FAX (206) 296-0955

**SEATTLE POLICE** EST. 1869

**Cause #_____**

**GO# 2020-256129, 2020-275320, 2020-277818**

**Unit File Number:**

# Certification for Determination of Probable Cause

That Aaron Dalan is a Detective with the Seattle Police Department and has reviewed the investigation conducted in the Seattle Police Department Case Numbers **2020-256129, 2020-275320 and 2020-277818**.

There is probable cause to believe that **Jacob B. Greenberg** ██ **/2001** committed the crime(s) of **Assault in the First Degree with a Deadly Weapon, Arson in the First Degree, Arson in the Second Degree, and Possession of an Incendiary Device** in violation of **RCW 9A.36.011, RCW 9A.48.020, RCW 9A.48.030, and RCW 9.40.120** respectively within the City of Seattle, County of King, State of Washington.

This belief is predicated on the following facts and circumstances:

On September 1, 2020, at approximately 2030 hours, a group of individuals began gathering inside Cal Anderson Park located at 1635 11 Ave in the City of Seattle. The group was gathered specifically just north of the Shelterhouse inside of the park, which is a poorly lit area in the center of the park that has a been an ongoing gathering, training, staging, and supply location for the violent civil disorder events in the City of Seattle over the past several months. Almost all this group was dressed in what is referred to as "black bloc" attire. Black bloc is all black clothing that covers as much of the body as possible, including face coverings (even prior to the pandemic), in order to eliminate individual identification. Many of the members in the group had also donned helmets, respirators, tactical vests and other protective equipment.

Video of the incident shows that over the course of the next 30-45 minutes this group grew to approximately 75-100 individuals, almost all wearing black bloc clothing, helmets, etc..

At approximately 2120 hours, the group left Cal Anderson Park together, marching east on E Olive Way then south on 12 Ave towards SPD's East Precinct, arriving there a few minutes later. The group occupied the intersection of 12 Avenue and E Pine Street as several unidentified individuals spray painted the exterior ecology blocks set up to protect the precinct from damage. Other unidentified individuals threw garbage and garbage bags over the chain-link fencing built on top of the ecology blocks, towards the precinct.

One individual, hereafter referred to as S1 **(later identified as Jacob Greenberg)**, was wearing a



Cause #_____

**GO# 2020-256129, 2020-275320,**
**2020-277818**

**Unit File Number:**

## Certification for Determination of Probable Cause

black helmet with two distinctive light vertical lines on the back of it with a light square to the right of them, goggles, black face covering, black long sleeve coat/sweatshirt, gloves with light gray on the back of the hand and black on the palm side, black baggy pants, and dark gray/black shoes. S1 had a black backpack with a top flap enclosure hung so the bag oriented to their front. S1 also had a gray satchel with a black stripe on the top flap enclosure slung to his left side. Please see below:





S1                          S2                          S3

    S1 can be seen on the video interacting with two others in this intersection. The first of these other two individuals is hereafter referred to as S2 **(later identified as Danielle E. McMillan)**. S2 is seen in the video carrying a large paper bag cradled in their arms.

    The other individual with S1 and S2, hereafter referred to as S3, is taller, wearing a black helmet, respirator, black long sleeve jacket/shirt, black tights, black backpack, and carrying a large black open umbrella.

    S1, S2, and S3 can be seen on this video walking south through the crowd positioning themselves at the far southern edge of the crowd on the east side of the precinct. At least one other individual with an open

# Certification for Determination of Probable Cause

umbrella joined them there, and they all huddled under the umbrellas. Investigators have seen this tactic many times throughout this investigation and it is used to shield criminal actors as they either prepare for or are committing crimes.

At approximately 2126 hours according to the timestamp on East Precinct security cameras, **S2** is seen under the umbrellas lighting the wick of a Molotov cocktail and throwing it at the precinct. The Molotov cocktail fails to clear the chain link fence above the ecology block barriers and lands on the pavement and shatters in front of the barrier. The wick extinguished prior to the Molotov cocktail hitting the ground so the contents did not initially catch fire. After S2 threw the Molotov Cocktail, the group ran toward the east side of the street. After a short time, they returned to just in front of the ecology blocks and again huddled together with some members holding open umbrellas, shielding their actions.

After approximately a minute, a small flame can be seen in the video near the umbrellas, and S1 is seen throwing a lit Molotov cocktail successfully over the fence, striking the East Precinct on the northeast corner of the building. The contents ignited on the exterior of the East Precinct. The East Precinct was occupied by officers at the time of the attack. S1 can be seen in the video picking up the black backpack they were carrying, running to the east side of the street, and meeting back up with S2 who appears to give S1 a pat on the shoulder as they walk north on 12 Avenue.

As S1 and S2 walk north, a fourth suspect, hereafter referred to as S4, is seen lighting a Molotov cocktail. S4 throws the lit Molotov at the East Precinct; it clears the fence but shatters as it strikes the metal light pole near the southwest corner of 12 Avenue and E Pine Street. The Molotov cocktail rains down flames inside and outside the barrier and the pole remains on fire burning flammable liquid. The explosion of flames from S4's Molotov cocktail ignited the ground in the area of S2's Molotov cocktail that failed to clear the fence and broke on the ground. This indicates the Molotov S2 threw contained flammable liquid capable of igniting.

A fifth suspect, hereafter referred to as S5, was directing a bright strobe light at the precinct security camera that is mounted to the northeast corner of the building. This individual began this action almost as soon as the group entered the intersection of 12 Avenue and E Pine Street. S5 continued to obscure the vision of the camera through all three Molotov cocktail attacks on the precinct, and only turned and began



Cause #_____

GO# 2020-256129, 2020-275320, 2020-277818

Unit File Number:

# Certification for Determination of Probable Cause

walking away after S4 had thrown their Molotov cocktail and was walking away northbound on 12 Avenue.

It is clear from a review of the incident that this was a well-coordinated, non-spontaneous incendiary attack on the East Precinct as officers were inside the precinct. The group had clearly orchestrated the obscuring of security cameras, and the shielding of the criminal actors as they prepared their Molotov cocktails for throwing.

## September 11, 2020 March on the West Precinct

On September 11, 2020, at approximately 1900 hours the Black and Indigenous Coalition marched from the area of Broadway and E Pine St to the West Precinct located at 810 Virginia St in Seattle. Video from the event depicts S1 from the September 1, 2020 arson at the East Precinct.




**S1 in front of the West Precinct in the first picture, S1 at 8 Ave and Pine St in the second picture.**

At several points during the video, S1 can be seen wearing the same black helmet with light vertical stripes on the back of the head and a light square to the upper right of it they wore during the East Precinct Molotov cocktail attack on September 1, 2020 . S1 is also wearing a black backpack with the top flap enclosure, a full-face respirator with white circular filters is hung from their backpack, black baggy pants

# Certification for Determination of Probable Cause

with a white linear design on the left knee, dark gray/black shoes, gray camera bag with a black stripe on the top flap enclosure, and a camera strapped around his neck.

Although S1 did not appear to be involved in illegal activity during this event, his actions and the photographs of him assist in positively identifying him.

### September 23, 2020 Riot at East Precinct

On September 23, 2020, at approximately 1900 hours, a group began gathering in Cal Anderson Park, located at 1635 11th Ave at Seattle. Members of this group were primarily dressed in the common "black bloc" attire seen during violent riots.

Over the next 30 minutes to an hour, this group swelled to 250-300 individuals. This group left the park and marched through the Capitol Hill and downtown areas of Seattle. This group smashed windows along the way, and SPD officers moved in and dispersed the crowd and followed it back to Cal Anderson Park from 4 Ave and Union St downtown.

This group remained in the park for a while until it marched again and made its way to the intersection of 11 Ave and E Pine St., where it set up a barrier with objects such as garbage cans and other debris from the side of the road on the east side of the intersection. At approximately 2245 hours, the crowd continued to block the intersection, and set off explosions in the sally port area on the north side of SPD's East Precinct facility. Because of the continued riotous behavior of the crowd, SPD commanders deployed officers to arrest those for whom probable cause had been developed for unlawful behavior. Over the next several minutes, officers made arrests as SPD commanders gave orders to disperse due to the unlawful assembly.

At approximately 2305 hours, several SPD bicycle officers were riding east on E Pine Street near 11 Avenue when an unknown suspect grabbed the bicycle of SPD Officer Jimenez, serial number #8659, causing him to crash to the ground just south of the intersection at 11 Avenue and E Pine Street. The riotous group continued to approach from the south, with several members scattered through the intersection at 11 Avenue and E Pine Street around officer Jimenez. As Officer Jimenez was getting up off the ground, an unidentified suspect threw a traffic cone at him while the hostile crowd continued to advance east. Another

**SEATTLE POLICE** | Cause #_____ | GO# **2020-256129, 2020-275320, 2020-277818**

**Unit File Number:**

# Certification for Determination of Probable Cause

unidentified suspect grabbed the rear tire of Officer Jimenez's bike and wrestled him for it. Separated from other officers because of the crash, and with an approaching hostile crowd, Officer Jimenez deployed pepper spray at this unidentified suspect trying to take his issued bicycle.

While Officer Jimenez was distracted by the unidentified suspect wrestling him for his bike facing west, a suspect identified as S1 from the Molotov cocktail attack on the East Precinct on September 1, 2020, ran towards Officer Jimenez from behind with what appeared to be an aluminum baseball bat. S1 wound, up, stepped into his swing, and with the full swing of a baseball player, struck the back of Officer Jimenez's head. The force of the strike was powerful enough that S1's follow-through from the strike to Officer Jimenez's head appeared to throw S1 off balance and caused him to stumble to the ground next to Officer Jimenez. As S1 fell to the ground, Officer Jimenez deployed pepper spray towards him as he continued to retreat to the east with his bike. From the video, it appears that S1 would have been hit with at least a portion of this pepper spray deployment. Officer Jimenez continued retreating away from the hostile crowd to the east and S1 was not arrested. The baseball bat was also not recovered.

Because of the strike to the head, Officer Jimenez was transported to the hospital for evaluation and no injury was found. Officer Jimenez's helmet was examined and it was discovered that the force of the impact of the baseball bat was so great there was a vertical crack to the protective interior rigid foam from the base to nearly the top of the helmet. The helmet functioned as it was designed taking the brunt of the force applied by the baseball bat, saving Office Jimenez from likely grave injury.

Unique items of clothing observed on S1 during the assault included a full face mask with white circular filters, black balaclava, a gray camera bag with a black stripe in the middle on the top flap, black baggy pants with some sort of white writing on the left leg near the knee, gray or black shoes with some sort of linear white marking in the middle of the sole, black raincoat, and black backpack.

///

///

///

Cause #_____    GO# 2020-256129, 2020-275320,
2020-277818

Unit File Number:

# Certification for Determination of Probable Cause



Screen capture of video of the assault on Officer Jimenez, showing S1 running towards him with the baseball bat as he is wrestling another suspect for his bike.



Screen capture from the livestream video just before S1 strikes Officer Jimenez in the head with the baseball bat. Note gray camera bag near S1's left hip.

///

///

///

///

**SEATTLE POLICE**

Cause #_____

GO# 2020-256129, 2020-275320,
2020-277818

Unit File Number:

# Certification for Determination of Probable Cause



**Screen capture from a video showing the moment of impact against Officer Jimenez's head. Shows the white linear design on S1's left leg and the full-face respirator with circular white filters.**

///

///

///

///

///

///

///

///

///



Cause #_____

GO# 2020-256129, 2020-275320,
2020-277818

Unit File Number:

# Certification for Determination of Probable Cause



**Officer Jimenez's helmet with a visible vertical crack through the protective rigid foam at the rear of his helmet from the impact of the baseball bat.**

About an hour after the attack on Officer Jimenez, at approximately 0008 hours on the morning of September 24, 2020 Officer Doaks was near the Capitol Hill light rail station at Broadway and E Denny Way when his body-worn video captured S1 on the sidewalk with several of the other rioters from earlier that evening. This video more clearly captures the clothing of S1. S1 is seen still wearing his full-face respirator with the circular white filters, black rain jacket, black gloves with what appears to be a linear marking on the back of the hands, black baggy pants with a linear mark just below the left knee, and dark gray/black shoes. In this video, it can be seen there is some sort of lighter coloration on the right toe of the gray/black shoe that is not present on the left.



Cause #_____

GO# 2020-256129, 2020-275320,
2020-277818

Unit File Number:

## Certification for Determination of Probable Cause

As Officer Doaks is standing in front of S1 at this location, S1 is taking photos with his camera, which has what appears to be a larger lens on it. Officer Doaks and other officers there were unaware of the description of the suspect in the attack on Officer Jimenez at the time, and S1 was not detained or identified.



**Screen captures from Officer Doaks body-worn video showing the white linear marking near the left knee, the discoloration on the right toe of the shoes, and the white linear marking on the gloves.**

### September 26, 2020 Riot at East Precinct

On September 26, 2020, at approximately 1500 hours, a group began gathering in and around the area of Cal Anderson Park, at 1635 11 Ave in Seattle. The group grew over the next 30 minutes to approximately 100 individuals, who were dressed in the common black bloc attire seen recently during the violent riots throughout the Seattle area. Many also donned helmets, respirators and gloves. Many individuals armed themselves with shields in apparent preparation for physical confrontation with police.

///

///



Cause #_____

GO# 2020-256129, 2020-275320, 2020-277818

Unit File Number:

# Certification for Determination of Probable Cause

**Arson and Unlawful Assembly/Riot**

By approximately 1900 hours, some car brigade members along with the marchers made it back to the area of 11 Avenue E and East Pine Street. While at this intersection, the group moved trash cans and dumpsters into the roadway across E Pine St on 11th Ave, creating a barricade between them and police officers at the East Precinct to the east. Shortly after this barricade was set up, an unknown subject set the contents of the dumpsters and other containers on fire.

It was at this intersection that investigators were made aware that a video that captured S1 in the crowd near 11 Ave and E Pine St. Investigators came into the area, and located S1, who was wearing the same full-face respirator, black rain jacket, black baggy pants, gray/black shoes, black backpack, gray camera bag and was carrying a camera around his neck.

S1 was observed by detectives squirting the contents of a white container with a red top, common for lighter fluid containers, onto the onto the dumpsters and trashcans. The fire instantly flared up and spread across the municipal property (dumpsters, trash cans). S1 was observed approaching the growing flames numerous times repeatedly squirting the flammable liquid he possessed on the flames. Each time S1 squirted the liquid, the flames instantly grew larger until they engulfed the dumpsters, trash cans, and nearly the length of the intersection with the flames eventually reaching seven to eight feet in height.



**Above- Greenberg captured squirting a flammable liquid to feed the flames of the barricade**



**SEATTLE POLICE** EST 1869

Cause #_____

**GO# 2020-256129, 2020-275320, 2020-277818**

**Unit File Number:**

# Certification for Determination of Probable Cause

S1 was seen by investigators at least one time stepping to the southeast corner of 11 Ave and E Pine St. after dousing the flames with the flammable liquid, to take pictures with the camera around his neck.

Based on S1's actions, investigators believed that probable cause existed to arrest S1 for investigation of arson. Investigators maintained a visual on S1 until uniformed arrest teams could move in and place him into custody. When arresting officers moved in for the arrest, S1 attempted to run from officers but was quickly captured and placed into custody.

This male was identified as **Jacob B. Greenberg** **/2001,** and he was taken to the West Precinct, where his property and clothing were seized as evidence. Among the items seized were:

- A black raincoat
- Black oversized pants with "Columbia" stenciled in white on the left knee. This Columbia stitching is consistent with the marking seen on S1's left knee during the march on the West Precinct September 11, 2020, and the attack on Officer Jimenez on September 23, 2020. The bagginess of the pants is consistent with the ones S1 is wearing during the Molotov attack on the East Precinct on September 1, 2020.
- A full-face respirator mask with white round filters, consistent with the one S1 was observed wearing during the attack on Officer Jimenez on September 23, 2020. The circular white filters on the full-face respirator had what appear to be an orange residue on at least one of them. The pepper spray that SPD uses is orange in color and consistent with the color of the residue on this filter. The presence of this is also consistent with the September 23, 2020, incident, during which Officer Jimenez pepper sprayed S1 as he fell to the ground. This mask is also seen hanging off S1's backpack during the march on the West Precinct on September 11, 2020.
- A Nikon camera consistent with the one S1 is seen holding in Officer Doaks' body-worn video shortly after Officer Jimenez's attack, and during the march on September 11, 2020.
- A gray camera case with a black stripe on the top flap of the fold-over enclosure with shoulder strap, consistent with the one S1 was observed wearing during the Molotov cocktail attack on the East Precinct on September 1, the march on the West Precinct on September 11, and during the attack on Officer Jimenez on September 23, 2020.

**SEATTLE POLICE** EST 1869

Cause #_____

GO# 2020-256129, 2020-275320, 2020-277818

**Unit File Number:**

# Certification for Determination of Probable Cause

- A black balaclava consistent with the one S1 wore during the Molotov cocktail attack of the East Precinct on September 1, 2020, the march on the West Precinct on September 11, 2020 and the attack on Officer Jimenez on September 23, 2020.

- Black "Head" brand gloves. These Head brand gloves have the brand name "Head" stenciled in reflective writing on the back of each hand in a similar location as shown above from Officer Doaks' body-worn video of S1 following the assault of Officer Jimenez on September 23, 2020.

- Gray and black shoes. The shoes pictured below have a light stain on the right toe, consistent with the discoloration seen on S1's right shoe on Officer Doaks' body-worn video seen on September 23, 2020. The soles of these shoes also have the same distinctive light linear marking in the middle consistent with the soles seen in Officer Jimenez's body-worn video after S1 struck him in the head and fell next to him.

- Gloves with light gray on the backs of the hands, black on the palms. These are consistent with the gloves S1 was wearing in the Molotov cocktail attack on the East Precinct on September 1, 2020.

- Black backpack with a fold-over enclosure consistent with the one S1 was wearing during the Molotov cocktail attack on the East Precinct on September 1, 2020, the march on the West Precinct on September 11, 2020 and during the attack on Officer Jimenez on September 23, 2020.

- Notable items inside Greenberg's black backpack: goggles similar to the ones S1 was observed wearing during the Molotov cocktail attack on the East Precinct on September 1, 2020 and during the march on the West Precinct on September 11, 2020. There were also two empty O'Douls glass bottles and 4 bandanas; the only missing portion from this equation of a potential Molotov cocktail was some sort of flammable liquid.

- Also seized from Greenberg was an iPhone and an iWatch

    ///

    ///

    ///



Cause #_____    GO# 2020-256129, 2020-275320,
2020-277818

Unit File Number:

# Certification for Determination of Probable Cause

---

**Photos of personal property recovered from Greenberg following his arrest on September 26, 2020:**





Greenberg invoked his rights to an attorney before questioning so investigators did not ask him any questions about the crimes he was suspected of committing.

Cause #_____          **GO# 2020-256129, 2020-275320,
2020-277818**

**Unit File Number:**

# Certification for Determination of Probable Cause

## Search Warrant Service

On September 27, 2020, investigators obtained a King County Superior Court search warrant for Greenberg's residence at 11508 NE 107 Pl Kirkland, WA 98033.

At approximately 0515 hours, investigators served this warrant as Laura Ruderman, Greenberg's stepmother, was present. Investigators recovered two baseball bats, including one aluminum one that had both blue and silver coloration to it from his bedroom which was pointed out by Ruderman. The baseball bat in the video on the attack on Officer Jimenez is washed out with light and appears to be at times all silver in color, and at other times shows some color to it. The investigation as to whether investigators have recovered the baseball bat used during the attack is ongoing.

## The Search of Greenberg's Vehicle

On September 29, 2020, I obtained a warrant to search Greenberg's vehicle that was found and seized from the 1000 block of E Denny Way on the night of September 26, 2020. The silver 2002 Lexus RX VIN: ▮▮▮▮▮▮▮ with the temporary tag WA LIC/ ▮▮▮▮ in the rear window was still stored in the secure SPD Vehicle Processing Room.

On the rear passenger side floorboard, investigators located a black helmet with a silver triangular design with a small white square to the right of it on the back. When the nylon strap that is mounted vertically in the center of this triangle is snapped together with the button enclosure, it creates what appears to be two vertical lines similar to the ones seen in the photos above worn by S1 on September 1, 2020 (far left photo), and Greenberg on September 11, 2020 (far right photo). See below:

///

///

///

///

Cause #_____    GO# 2020-256129, 2020-275320,
2020-277818

Unit File Number:

# Certification for Determination of Probable Cause





**Recovered helmet**



## Search of Greenberg's Phones

Pursuant to a subsequent search warrant, two phones owned by Greenberg were searched. That search revealed Greenberg had a chat thread with a female named "Mariel" who had the number (206) 839-7600 associated with her. The following are highlights of relevant points in the conversation that began on August 31, 2020 and ended on September 18, 2020:

**September 1, 2020 (The night of the Molotov cocktail attack on the East Precinct)**

**4:39 PM**

**Mariel:** *"Hey so yeah I know there will be people later but like I said I want to get some stuff going tonight. Like some real shit, ya know?"*

**4:40 PM**



Cause #_____     GO# 2020-256129, 2020-275320,
                                                      2020-277818

Unit File Number:

# Certification for Determination of Probable Cause

**Greenberg:** *"Yea I know. But what I'm telling you is that ppl will be there tonight. Also we should ask someone before burning the shelter house or is that not our target."*

**4:41 PM**

**Mariel:** *"Yeah that's not what saying"*

    *"I would never do that"*

**5:07 PM**

**Mariel:** *"At cal I can meet you"*

    *"What's needed for the cocktail s"*

**5:41 PM**

**Greenberg:** *"Gas, mid sized bottle, wicc, rag"*

    The two continue to talk about meeting up in the park and the conversation stops until after the Molotov cocktail attack. The two check in with each other when they get home telling the one another they made it home alright and exchange congratulatory messages talking about their desire to memorialize the "action" with tattoos of burning Molotov cocktails or antifascist symbols.

**11:16 PM**

**Mariel:** *"Yeah just got home. Was about to ask you the same thing, thanks for being a good and loyal protest buddy."*

    *"I was so worried they tagged my car"*

**Greenberg:** *"Thank you for not being loud about anything and for being smart while we did a good action. Ur a great protest buddy. Thank you."*

**September 2, 2020**

**12:00 AM**

**Mariel:** *"I have a pic of the fire, can I tag you or no?"*

**12:02 AM**

**Greenberg:** *"In what would you tag me. Also make sure you give credit wo whoever got the picture"*

**12:03 AM**



Cause #_____          GO# 2020-256129, 2020-275320,
                                              2020-277818

                                              **Unit File Number:**

# Certification for Determination of Probable Cause

**Mariel:** *"I took it an just being there"*

Later in the conversation, Mariel talks about her failed throw at the East Precinct:

**12:24 AM**

**Mariel:** *"I know I was an idiot who threw it at and not over lmao"*

          *"Damnn Nice"*

**12:25 AM**

**Greenberg:** *"Lol I mean yea but you know for next time lol. I think we were both nervous as fuck and so yea but next time you'll get it"*

**Mariel:** *"Do you think he'd mind if I shared that and have him credit"* (Talking about a screenshot from video of September 1, 2020)

**12:26 AM**

**Greenberg:** *"No as long as you gave him credit then you should be all good. And don't tag me again cuz I don't want to much attention on me at the moment?*

**12:32 AM**

**Mariel:** *"Of course not"*

**Greenberg:** *"Thanks. Ur awesome"*

**12:34 AM**

**Mariel:** *"So are you, we gotta stick together so nothing bad happens. Also we got to find people who are willing to do stuff like us?*

**Greenberg:** *"Yeah definitely. I say we make SPOG a bit toasty like we did to ep tonight"*

SPOG is the Seattle Police Officer's Guild that has been attacked with Molotov cocktails and the site of several violent protests. The "ep" reference is likely the SPD East Precinct.

The following exchange happened later in the afternoon on September 2, 2020 and demonstrates their ongoing planning for future Molotov cocktail and explosive attacks on targets in Seattle.

**September 2, 2020**

**4:52 PM**



Cause #_____

GO# 2020-256129, 2020-275320,
2020-277818

**SEATTLE POLICE**

Unit File Number:

## Certification for Determination of Probable Cause

**Mariel:** *"Thank you, yeah I think if we get the alcohol from your parents or even if I buy a cheap vodka and just be smart about dumping them in each bottle that will be the way to go. Start finding all those used bottles that will make a big difference. I hope we can find some fireworks."*

**4:53 PM**

**Greenberg:** *"How many Molotovs are you think we should have by Labor Day. Cuz we shouldn't over use our resources ya dig?"*

**4:55 PM**

**Mariel:** *"Well we should count on a couple failing but as long as we planit right it can be cost effective?"*
        *"I think 10"*

In another chat thread, Greenberg brags about his involvement with the arson of the East Precinct and Juvenile facility:

**Greenberg:** *"Oh I was also a part of the youth jail fires. Hell yea dude. That's fucking awesome. **I was the one who Molotov the east precinct** and other then that I've broken windows for other people to do DA and I tag all over the place. I'm trying to do more DA tho. And no I don't know potato at least from the name."* (emphasis added)

In another chat, Greenberg inserted a KOMO news article that shows a photo of him swinging the bat towards Officer Jimenez's head and had the follwong text exchange:

**Greenberg:**    *"Also this ^^^"* (Pointing to the attached article)

**8:56 PM**

**Other:** *"I telling!"*

**Greenberg:** *"Wdym"*

**8:57 PM**

**Other:** *"Hello 911... I hear you're looking for bat man."*

**Greenberg:** *"Sniiiiiiiiiiitch lmao"*

        *"I like that bat man name lol"*



Cause #_____

GO# 2020-256129, 2020-275320,
2020-277818

Unit File Number:

# Certification for Determination of Probable Cause

Investigators also located a chat thread Greenberg had with an individual by the name of Danielle McMillan that started on September 21, 2020 and stopped on September 25, 2020.

The two discuss protests and the fact that McMillan cannot attend them recently because she has been sick. From the context of the conversations in this thread it is clear to investigators that Danielle McMillan is Mariel from the prior chat thread.

**September 24, 2020, Greenberg and McMillan discuss the attack on a Seattle Police Officer earlier that night.**

**1:43 AM**

**Greenberg: "***I AM SO PISSED AT THE COPS!!! I FUCKING WENT OFF ON THEM TONIGHT***"**

Greenberg sends a link of a video of Seattle Police Officer Jimenez being assaulted with a bat with the attached caption: "Holy shit he hit this cop in the head with a bat so hard…"

**Danielle McMillan:** *"Lol nice!"*

**Greenberg:** *"Thanks (smile emoji)"*

**Danielle McMillan:** *"Very proud of you!"*

**Greenberg:** *"Appreciate it. I'm proud too hehe. Wish he didn't have a helmet on lol"*

**Danielle McMillan:** *"Well still a great shot though"*

**Greenberg:** "*Indeed it was. Thank you"*

Later on September 24, 2020, the two are discuss hiding or destroying evidence related to their crimes:

**Danielle McMillan:** *"As long as your accounts were locked and you did not have texts or photos you should be fine. I would even go as far as dismantling your fb or any account you feel is compromised."*

*"Did you delete all our convos?"*

*"I know I deleted the app on my phone."*

**Greenberg:** *"I'll do that rn"*

   *"The ones from Signal are gone"*

Cause #_____    GO# 2020-256129, 2020-275320,
2020-277818

**Unit File Number:**

# Certification for Determination of Probable Cause

**Danielle McMillan:** *"Were you on signal recently?"*

*"Delete all our conversations on telegraph as well"*

Other notable quotes from Greenberg in his communications:

**September 3, 2020 at 10:27 PM:** *"And can we like pls slit every spd throat"*

**September 3, 2020 at 10:54 PM:** *"I want the whole damn system to just burn the fuck down!!! Btw I really like fire."*

Based on the foregoing investigation, there is probable cause to believe that Jacob Greenberg worked in concert with Danielle McMillan and others to plan, prepare, and execute the incendiary attack on the SPD East Precinct that occurred on September 1, 2020. Because of this I have probable cause that Jacob B. Greenberg ████/2001 committed the crimes of Attempted Arson in the First Degree and Possession of an Incendiary Device on that date.

Additionally, I have probable cause to believe Jacob Greenberg committed the crime of Assault in the First Degree with a Deadly Weapon by striking Officer Jimenez in the head with a baseball bat on September 23, 2020. Despite the opportunity to strike Officer Jimenez almost anywhere on his body as he was distracted and struggling with a hostile crowd with his back turned to him, Greenberg chose to strike Officer Jimenez in the head with enough force to crack the interior rigid foam of the helmet he was wearing.

Finally, I have probable cause to believe Jacob Greenberg committed the crime of Arson in the Second Degree by fueling the barricade engulfed in flames on September 26, 2020, damaging dumpsters and recycle bins that were dragged into the street.

Under penalty of perjury under the laws of the State of Washington, I certify that the foregoing is true and correct to the best of my knowledge and belief. Signed and dated by me this 16th day of October, 2020, at Seattle Washington.

#7558

| AGENCY: | WASPD0000 | FILE NUMBER | BOOKING NUMBER | **SUPERFORM** |
|---|---|---|---|---|
| **Seattle PD** | | 2020-256129 | | |

## ARREST INFORMATION

| DATE & TIME OF VIOLATION | CRIMINAL TRAFFIC CITATION ATTACHED? | | ACCOMPLICES |
|---|---|---|---|
| 9/1/2020 9:00 PM | ☐ YES  ☐ NO | | |

| DATE OF ARREST/TIME | ARREST LOCATION |
|---|---|
| 10/16/2020 11:55 AM | 12502  Totem Lake BD NE Kirkland, WA 98034 | |

## SUSPECT INFORMATION

| NAME (LAST, FIRST, MIDDLE/JR, SR, 1st, 2nd) | DOB | ALIAS, NICKNAMES |
|---|---|---|
| **Greenberg, Jacob Bennett** | ██/2001 | |

| ARMED/DANGEROUS | IDENTITY IN DOUBT? | CITIZENSHIP |
|---|---|---|
| ☐ YES  ☒ NO | ☐ YES  ☒ NO | N/A |

### PHYSICAL DETAILS

| SEX | HEIGHT | WEIGHT | SKIN TONE | RACE | EYE | HAIR | SCARS, MARKS, TATTOOS, DEFORMITIES |
|---|---|---|---|---|---|---|---|
| M | 510 | 145 | | W | BRO | BRO | |

### IDENTIFICATION DETAILS

| CCN | PRIOR BA # | AFIS # | FBI # | STATE ID # | DRIVER'S LICENSE # | STATE | SSN |
|---|---|---|---|---|---|---|---|
| | 0 | | ██ | WA28879819 | ██ | WA | |

### RESIDENCE / EMPLOYMENT / SCHOOL

| LAST KNOWN ADDRESS | EMPLOYER, SCHOOL (ADDRESS, SHOP/UNION NUMBER |
|---|---|
| 11508 NE 107 PL  Kirkland, WA 98033 | : , |

| RESIDENCE PHONE | BUSINESS PHONE | OCCUPATION |
|---|---|---|
| | | |

### EMERGENCY CONTACT

| PERSON TO BE CONTACTED IN CASE OF EMERGENCY | RELATIONSHIP | Address | PHONE |
|---|---|---|---|
| | | | |

## CHARGE INFORMATION

| OFFENSE | | RCW / ORD# | COURT / CAUSE # | CITATION # |
|---|---|---|---|---|
| ☐ DV  ☐ FUGITIVE | I - ARSON INV | 2099 | / | |
| ☐ DV  ☐ FUGITIVE | I - ASSAULT INV | 1399 | / | |
| ☐ DV  ☐ FUGITIVE | | | | |

## WARRANT / OTHER

| WARRANT DATE | WARRANT NUMBER | OFFENSE | | AMOUNT OF BAIL | WARRANT TYPE |
|---|---|---|---|---|---|
| | | | | | |
| ORIGINATING POLICE AGENCY | ISSUING AGENCY | WARRANT RELEASED TO: (SERIAL # / UNIT / DATE / TIME) | | | |

## PROPERTY INFORMATION

LIST VALUABLE ITEMS OR PROPERTY LEFT FOR ARRESTEE AT JAIL

LIST VALUABLE ITEMS OR PROPERTY ENTERED INTO EVIDENCE (SIMPLE DESCRIPTION, IDENTIFYING MARKS, SERIAL #)

LIST ITEMS ENTERED INTO SAFEKEEPING

| TOTAL CASH OF ARRESTEE | WAS CASH TAKEN INTO EVIDENCE? | | SIGNATURE OF JAIL STAFF RECEIVING ITEMS / SERIAL # |
|---|---|---|---|
| $0.00 | ☐ YES  ☒ NO   AMOUNT: $0.00 | | |

## OFFICER INFORMATION

| ARRESTING OFFICER / SERIAL # | TRANSPORTING OFFICER / SERIAL # | SUPERVISOR SIGNATURE / SERIAL # |
|---|---|---|
| Miller, Scott    7496 | , | , |

| SUPERFORM COMPLETED BY (SIGNATURE/SERIAL#) | CONTACT PERSONFOR ADDITIONAL INFORMATION (NAME/SERIAL#/PHONE) |
|---|---|
| Miller, Scott | , |

## COURT FILE

| SUPERIOR COURT FILING INFO | ☐ IN CUSTODY  ☐ AT LARGE  ☐ OUT ON BOND | COURT CAUSE (STAMP OR WRITE) |
|---|---|---|
| COURT/DIST. CT.NO. | DIST. CT. BOND $ | SUP. CT. DATE |

## EXTRADITE

| PERSON APPROVING EXTRADITION | SEAKING-LOCAL ONLY WACIC-STATE WIDE ☐ | NCIC-WILL EXTRADITE FROM ID & OR ONLY ☐ | NCIC-WILL EXTRADITE FROM OR, ID, MT, WY, CA, NV, UT, CO, AZ, NM, HI, AK ☐ | NCIC-WILL EXTRADITE FROM FROM ALL 50 STATES ☐ |
|---|---|---|---|---|

| E N T R Y | CCN _____ | DOE _____ | C L E A R A N C E | DOC _____ |
|---|---|---|---|---|
| | WAC _____ | TOE _____ | | TOC _____ |
| | NCIC _____ | OP _____ | | OP _____ |

## PROBABLE CAUSE INFORMATION

### STATEMENT OF PROBABLE CAUSE: NON-VUCSA

EXHIBIT H



### English

Google Translate Disclaimer

# SPD Blotter
Seattle Police Department

---

Search SPD Blotter...  Go

| Home | SPD in the Community | Significant Incident Reports |

SPD Website

You are here: Home » General » 22 Individuals Arrested During Labor Day Demonstration

## 22 Individuals Arrested During Labor Day Demonstration

Written by Public Affairs on September 7, 2020 9:34 pm

Twenty-two individuals were arrested after a large group marched from the International District down to the Seattle Police Officer's Guild (SPOG) building on 4th Avenue South. The arrests were for arson, assault, obstructing and failure to disperse.

Officers recovered intact Molotov cocktails dropped by rioters outside the building as officers began making arrests. Officers arrested a number of individuals on 4th Avenue South as they continued to receive rocks, bottles, and explosives thrown at them by rioters.

## Search Blotter Posts

### September 2020

| M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

« Aug   Oct »

## Recent Posts

Suspect Arrested in Stolen Car, Handgun Recovered

2020 Halloween Safety Tips

Suspect arrested for Animal Cruelty in North Seattle

## Categories

Marijwhatnow
2019 Homicides
2020 Homicides
Significant Incident Reports
2018 Homicides
General
Chief of Police
News Release



🇬🇧 English

Google Translate Disclaimer



Package of Molotov Cocktails Left Behind
by a Protester

The crowd moved north on 4th Avenue as officers
followed. A Molotov cocktail was thrown by someone
in the crowd at officers, which exploded on the road.
Fortunately there were no injuries as a result.

0:00 / 0:50

Assault on Officer

SPD in the Community 🔶

Car Prowls 🔶

Police Precincts 🔶

    North Precinct 🔶

    South Precinct 🔶

    Southwest Precinct 🔶

    East Precinct 🔶

    West Precinct 🔶

Specialty 🔶

    Harbor 🔶

    Mounted 🔶

    Canine 🔶

Traffic 🔶

    ADRT 🔶

    Commercial Vehicle Enforcement 🔶

Data 🔶

SPD 2020 🔶

Week in Crime 🔶





Google Translate Disclaimer

0:00 / 1:08

Molotov Cocktail Thrown at Officers

Officers followed the large group as they eventually headed east and then south toward Judkins Park. Most of the group broke up at the point.

An additional five individuals were arrested later in the night at 14th Avenue South and Rainier Avenue South as officers were attempting to impound a vehicle.

*Categories: General*

« « Detectives Investigating Apparent Homicide in Mt. Baker Neighborhood
» » Update: Homicide Detectives Investigating After Victim Succumbs to Injuries

**Blotter Disclaimer:** Seattle Police officers respond to hundreds of events every day. The information you see in The Blotter is just a sampling. Information is subject to change as case investigation proceeds. Individuals arrested on the basis of probable cause have not been charged.

Additional information regarding each posting may be obtained by reviewing associated police reports in their entirety. SPD does not accept disclosure requests via social media. Please contact the Seattle Police Department's Public Disclosure Unit for all records requests. Find the process for submitting requests here. http://www8.seattle.gov/seattle-police-department/records-request-center/.

Report a problem with our website

Copyright © 2020 SPD Blotter | Seattle Police News | Privacy & Security Policy | Admin Login

**ADA Notice**          **Notice of Nondiscrimination**



 English

Google Translate Disclaimer

EXHIBIT I

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, and ALEXANDRA CHEN,

                    Plaintiffs,

v.

CITY OF SEATTLE,

                    Defendant.

NO. 2:20-cv-00887

DECLARATION OF DAVID PUENTE

I, DAVID PUENTE, hereby declare as follows:

1.     I am over the age of 18 years old and am a citizen of the United States. I have personal knowledge of the facts set forth herein and am competent to testify to them at trial.

2.     I am a Detective with the Seattle Police Department. At approximately 3:00 pm on Friday, June 12, 2020, I sent the following email to all Seattle Police Department officers via the

DECLARATION OF DAVID PUENTE - 1

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  Department's email system. While the email shows it was sent to "SPD_aprs," I also blind-copied

2  the SPDALL group, which sent it to all Seattle Police officers.

3  Temporary injunction on chemical irritants and projectiles during protests or demonstrations

4  Puente, David
   To ○ SPD_aprs
   Bcc ☰ SPDALL

   ↩ Reply   ↩ Reply All   → Forward   ···

   Fri 6/12/2020 3:03 PM

5  Retention Policy 7 yr (7 years)                Expires  6/11/2027

6  By the order of the Chief, all SPD personnel are required to read and abide by the following:

7  **ORDER** granting in part Plaintiffs' [6] Motion for Temporary Restraining Order. The Court temporarily **ENJOINS** The City of Seattle, including the Seattle Police
   Department and any other officers, departments, agencies, or organizations under the Seattle Police Department's control (collectively, the City), is hereby

8  enjoined from employing chemical irritants or projectiles of any kind against persons peacefully engaging in protests or demonstrations. This injunction includes:
   (1) any chemical irritant such as and including CS Gas (tear gas) and OC spray (pepper spray) and (2) any projectile such as and including flash-bang grenades,

9  pepper balls, blast balls, rubber bullets, and foam-tip projectiles. This Order does not preclude individual officers from taking necessary, reasonable, proportional,
   and targeted action to protect against a specific imminent threat of physical harm to themselves or identifiable others or to respond to specific acts of violence or

10 destruction of property. Further, tear gas may be used only if (a) efforts to subdue a threat by using alternative crowd measures, including pepper spray, as
   permitted by this paragraph, have been exhausted and ineffective and (b) SPD's Chief of Police has determined that use of tear gas is the only reasonable

11 alternative available. The Chief of Police may only authorize limited and targeted use of tear gas and must direct it to those causing violent or potentially life-
   threatening activity. To the extent that chemical irritants or projectiles are used in accordance with this paragraph, they shall not be deployed indiscriminately into

12 a crowd and to the extent reasonably possible, they should be targeted at the specific imminent threat of physical harm to themselves or identifiable others or to
   respond to specific acts of violence or destruction of property. (2) In the event that Plaintiffs seek relief for an alleged violation of this Order, the City must respond

13 to the motion for relief within 24 hours.(3) Because this is a non-commercial case, the balance of hardships favors Plaintiffs, and there is no realistic likelihood of
   harm to the City of Seattle from enjoining its conduct, the Court waives the security bond requirement.(4) This Order will expire fourteen days after entry unless

14 extended by the Court for good cause. Fed. R. Civ. P. 65(b)(2). Signed by Judge Richard A. Jones.(PM)

15

16      I declare under penalty of perjury under the law of the United States that the foregoing is

17 true and correct.

18      SIGNED in Seattle, Washington this 29th day of July, 2020.

19

20      _____
        DAVID PUENTE

21

DECLARATION OF DAVID PUENTE - 2

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

EXHIBIT J

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-KING
COUNTY, ABIE EKENEZAR, SHARON
SAKAMOTO, MURACO KYASHNA-
TOCHA, ALEXANDER WOLDEAB,
NATHALIE GRAHAM, and ALEXANDRA
CHEN,

                Plaintiffs,

v.

CITY OF SEATTLE,

                Defendant.

NO. 2:20-cv-00887

DECLARATION OF GHAZAL SHARIFI

I, GHAZAL SHARIFI, hereby declare as follows:

1.      I am over the age of eighteen years and am a citizen of the United States. I have personal knowledge of the facts set forth herein and am competent to testify to them at trial.

2.      I am one of the attorneys of record for the City of Seattle ("The City") in this matter.

***Procedural Background***

3.      On August 28, 2020, Plaintiffs' counsel sent a letter to the City requesting information regarding SPD's use of CCWs at a demonstration in the Eastlake neighborhood on

DECLARATION OF GHAZAL SHARIFI
(2:20-CV-00887) - 1

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

August 26 and how City viewed its response as consistent with the Court's Orders. (Dkt. 115 at Ex. A). The letter did not mention a motion for contempt.

4.      On September 4, the City timely replied with the detailed information requested. (Dkt. 115 at Ex. B.)  Plaintiffs' counsel did not respond to the City's September 4 letter, nor did they request additional information or a meet and confer with respect to any issues arising from the August 26 demonstration.

5.      On September 9, 2020, Plaintiffs' counsel sent a letter to the City requesting information regarding SPD's use of CCWs at a demonstration near the Seattle Police Officer's Guild ("SPOG") building on September 7.  (Dkt. 115 at Ex. C).  The letter requested information about the CCWs deployed and how the City viewed its response as consistent with the Court's Orders. The letter indicated that Plaintiffs were considering asking the Court to reopen contempt proceedings against the City.

6.      On September 11, the City promptly replied with the requested information.  (Dkt. 115 at Ex. D).  Plaintiffs' counsel did not respond to the City's September 11 letter, request additional information, or schedule a conference to discuss the issues raised.

7.      On Thursday, September 24, 2020, Plaintiffs' counsel sent another letter, requesting information regarding SPD's use of CCWs at demonstrations taking place in the Capitol Hill neighborhood over September 22 and 23.  (Dkt. 115 at Ex. E).  In addition to seeking detailed information, Plaintiffs' counsel made a number of claims against the City beyond the scope of the Court's Orders, essentially demanding concessions of civil liability with respect to allegations of excessive force under the Fourth Amendment.

DECLARATION OF GHAZAL SHARIFI
(2:20-CV-00887) - 2

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

8.     The City's counsel acknowledged receipt of the letter on Friday, September 25, 2020, and indicated that a response would be forthcoming the following week.  Attached hereto as **Exhibit A** is a true and correct copy of the September 25, 2020 email from the City's counsel Carolyn Boies to Plaintiffs' counsel.   The City immediately thereafter began compiling information and preparing its response.

9.     At 6:30 a.m. on Tuesday, September 29, 2020, Plaintiffs' counsel sent an email requesting to meet and confer with the City that day about their "forthcoming motion for contempt."  Attached hereto as **Exhibit B** is a true and correct copy of the September 29, 2020 email from Plaintiffs' counsel David Perez.  Plaintiffs did not provide any details on the basis of the motion or their requested relief.  The City's counsel responded and indicated that its work responding to the September 24 letter would be paused, as it appeared Plaintiffs' counsel had changed their mind about their request for information.  Attached hereto as **Exhibit C** is a true and correct copy of the September 29, 2020 email I sent in response to Mr. Perez's email.

10.     A conference was scheduled for the same day, with Plaintiffs' counsel expecting "it will be a short call, as it seems that we fundamentally disagree about whether SPD's tactics involving less-lethal weapons are consistent with the Court's orders."  Attached as **Exhibit D** is a true and correct copy of the September 29, 2020 email from Plaintiffs' counsel Molly Tack-Hooper.

11.     During the telephonic conference on September 29, Plaintiffs informed the City they would be filing the subject motion based on events taking place on August 26 and September 7, 22, and 23.  Given the volume of relevant evidence and the significant effort necessary to

DECLARATION OF GHAZAL SHARIFI
(2:20-CV-00887) - 3

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

respond to the July motion for contempt, which only dealt with one specific demonstration, the City suggested the parties request a status conference with the Court to address the timing of a substantive response and next steps.  While the parties were in agreement that such a conference would be beneficial, Plaintiffs' counsel preferred the conference take place after the City filed an initial response to their motion for contempt.  Attached hereto as **Exhibit E** is the 6:07 p.m. email sent by Plaintiffs' counsel Molly Tack-Hooper on September 29, 2020.  Plaintiffs' counsel did agree to provide the City with 48 hours (an additional 24 hours) to file that response.  Plaintiffs' counsel did not notify the City about the relief they would be seeking in addition to a finding of contempt, and therefore the parties did not have an opportunity to meet and confer regarding the requested set forth in Plaintiffs' proposed order.

12.     Plaintiffs filed the subject motion on September 30, 2020.  Twenty declarations were filed, incorporating significant video clips.  Some of these videos were not previously provided to the City in the aforementioned correspondence preceding this filing.  (*Compare* Dkt. 116 at ¶14; Dkt. 118 at ¶12; with Dkt. 115 at Ex. A; *compare* Dkt. 130 at ¶8 with Dkt. 115 at Ex. C; *compare* Dkt. 133 at ¶23 with Dkt. 115 at Ex. E).  The motion seeks relief beyond the scope of the Court's Order.  During the parties' meet and confer on September 29, 2020, Plaintiffs' counsel did not raise the relief sought beyond a finding of contempt. *See* Dkt. 115 at 10-11.  Thus, the parties have not meaningfully met and conferred.

***The City and the Seattle Police Department's Review Process***

13.     As required by the federal Consent Decree, the Seattle Police Department has extensive procedures in place to ensure the integrity of its internal force reporting and review

DECLARATION OF GHAZAL SHARIFI
(2:20-CV-00887) - 4

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  systems.  All uses of force are reported by officers and reviewed by their chain of command.  See

2  section 8.400-8.500 of the Seattle Police Manual, available at https://www.seattle.gov/police-

3  manual/title-8

4       14.    Under SPD Manual Section 8.500-POL-2(4), officers have 30 days from the date

5  force is used to complete their use of force reports and for sergeants to review. They can also

6  request extensions to this deadline.

7       15.    For all serious uses of force, a supervisor or a team of specialized detectives

8  responds to the scene to investigate.  SPM § 8.400-POL-4 & POL-5.  In this context, serious force

9  means any force that causes or is reasonably expected to cause physical injury greater than

10 transitory pain.  *See* SPM § 8.050.  After each investigation is complete, SPD's Force Review

11 Board determines whether the force complied with policy, training, and tactics, and makes

12 recommendations, if necessary, for systemic changes.  SPM § 8.500-POL-4.  Throughout this

13 process, the chain of command and the Force Review Board both make referrals to the Office of

14 Police Accountability (OPA) for disciplinary investigations as appropriate.  SPM § 8.500-POL-

15 4(10) & 5.002-POL-5 & POL-6.

16      16.    OPA is an independent, civilian-led agency that investigates allegations of

17 misconduct against individual police officers.   Accountability Ordinance, § 3.29.100(B) &

18 3.29.010(B)                                  (available                                  at

19 https://www.seattle.gov/Documents/Departments/OPA/Legislation/2017AccountabilityOrdinanc

20 e_052217.pdf).  The City established OPA as an independent oversight system, to ensure that SPD

21 officers and non-commissioned personnel abide by the spirit and letter of the laws and policies

DECLARATION OF GHAZAL SHARIFI
(2:20-CV-00887) - 5

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

governing their actions. OPA is part of a three-pronged oversight system, implemented pursuant to the goals of the 2012 Consent Decree, along with its accountability partners the Office of the Inspector General for Public Safety (OIG) and the Community Police Commission (CPC). OPA helps ensure that the actions of SPD employees are constitutional and in compliance with federal laws, state laws, local laws, and with City and SPD policies, and to promote respectful and effective policing by initiating, receiving, classifying, investigating, and making findings related to misconduct. The OIG helps ensure the fairness and integrity of the police system as a whole in its delivery of law enforcement services by providing civilian auditing of the management, practices, and policies of SPD and OPA and oversee ongoing reforms. CPC helps ensure public confidence in the effectiveness and professionalism of SPD and the responsiveness of the accountability system, amongst other goals. *See generally,* Accountability Ordinance, § 3.29.100.

17. Complaints of misconduct involving an SPD employee officer can be made directly by anyone, whether it be a member of the public or from an internal referral and are accepted by whatever means they are communicated to OPA. All SPD employees have a duty to refer possible misconduct of which they are aware to OPA and may do so either directly or through a supervisor. When a complaint is received, confirmation is sent to the complainant, and within five days, notification is set to the named employee, their supervisor, and their bargaining unit. (*See* OPA Internal Operations and Training Manual, https://www.seattle.gov/Documents/Departments/OPA/manuals/2016_04_01_OPA_Manual_Court_Approved.pdf). The status of the complaint can be checked on the OPA's website at any time (*See* https://www.seattle.gov/opa/case-data).

DECLARATION OF GHAZAL SHARIFI
(2:20-CV-00887) - 6

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

18.     The following is a condensed synopsis of the OPA process, which is documented in detail in the Internal Operations and Training Manual.[1]  Upon receipt of a complaint, OPA undertakes a preliminary investigation, gathering basic information about the incident, including who was involved, what happened,  the location, time, how the alleged misconduct came to light, and why it happened.  Within 30 days OPA must issue a classification report, listing all allegations, identifying the complainant, SPD employees, witnesses, a brief factual summary of the incident and allegations made, and listing the SPD Manual Section(s) implicated.  The report will note whether a complaint is classified for Supervisor Action or an OPA Investigation.  A Supervisor Action classification is used for conduct that either was not a violation of policy or was a minor violation of policy that may be addressed through education, communication, counseling or coaching.  Allegations of excessive or unnecessary force, biased policing, and criminal behavior are automatically classified for a full investigation.

19.     When a case is classified for investigation, an OPA Lieutenant assigns it to an OPA Investigator.  The default time limit to complete an investigation is 60 days, which may be lengthened or shortened depending on the complexity of the allegations and other factors.   The OPA investigation process involves a complete review of key sources of evidence including witness interviews/statements, documentary evidence including all SPD related reports, physical evidence including BWV, cell phone video, video and/or audio from the scene (e.g. security

---

[1] Available at:
https://www.seattle.gov/Documents/Departments/OPA/manuals/2016_04_01_OPA_Manual_Court_Approved.pdf

DECLARATION OF GHAZAL SHARIFI
(2:20-CV-00887) - 7

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

footage) or taken from witnesses (e.g. videos posted to social media). A timeline and schedule for the investigation is set. Interviews are scheduled and are recorded.

20.     An investigation must be completed and findings issued within 180 days. Certain circumstances allow OPA to request an extension to the 180-day timeline or "toll" the timeline. An extension may occur, for example, when the case has been referred to an external agency for criminal investigation, when witnesses may be unavailable, or for another reason beyond the control of SPD. Once the investigation is completed, it is certified by the OPA Director and OPA Auditor. The OPA Director then makes a recommended finding, i.e. Sustained, Not Sustained, or Training Referral, on each allegation which is provided to the Chain of Command via the Director's Certification Memorandum for comment.

21.     All of OPA's investigations are reviewed by the OIG for Public Safety which makes a determination as to whether the investigation was objective, thorough, and timely. *Id.* § 3.29.240(C). Once OPA's investigation and the OIG's review are complete, then OPA provides the Chief of Police with case analysis and recommended disciplinary findings, if any. *Id.* § 3.29.135. An appeal process also exists. (*See* OPA Internal Operations and Training Manual, fn. 1).

22.     As of the date of this declaration, OPA is handling around 121 cases and around 20,000 complaints since widespread protests began taking place nearly daily across the City. A separate complaint dashboard has been established on the OPA website for complaints stemming from any 2020 demonstration event. (https://www.seattle.gov/opa/case-data/demonstration-complaint-dashboard).

DECLARATION OF GHAZAL SHARIFI
(2:20-CV-00887) - 8

23.     The OPA process provides transparent, thorough, and objective investigations of complaints of possible misconduct.  The process provides a complete story of the incidents that are the subject of complaints.  The OPA process demonstrates the unreliability of a single video or perspective of a given event in the context of a broader, dynamic situation provided by, in this instance, crowds of individuals, including some bad actor's intent on harming peaceful protestors, property, and members of the police department.[2]

24.     Further, in their motion, Plaintiffs highlight for the Court the highly publicized video of a SPD bike officer appeared to roll over the head of an individual on the ground.  In accordance with SPD policy, this incident was immediately addressed by SPD command staff and later referred by OPA to the King County Sheriff's Office for an independent criminal investigation.  *See*  https://spdblotter.seattle.gov/2020/09/24/bike-officer-placed-on-leave-opa-sheriffs-office-conducting-reviews/.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

SIGNED in Seattle, Washington, this 2nd day of October, 2020.

GHAZAL SHARIFI

---

[2] *See* OPA determinations following intense public scrutiny and unprecedented number of complaints resulting from viral video clips. OPA investigated with other videos, interviews, and records review reaching sustained and not sustained findings. *See* *https://www.seattle.gov/opa/case-data/demonstration-complaint-dashboard.*

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

EXHIBIT A

From: **Boies, Carolyn** Carolyn.Boies@seattle.gov
Subject: RE: Letter regarding events September 22 and 23
Date: September 25, 2020 at 11:45 AM
To: Gilbert, Carolyn S. (Perkins Coie) CarolynGilbert@perkinscoie.com, Sharifi, Ghazal Ghazal.Sharifi@seattle.gov
Cc: Bob Christie bob@christielawgroup.com, Tom Miller tom@christielawgroup.com, Perez, David A. (Perkins Coie)
DPerez@perkinscoie.com, Molly Tack-Hooper mtackhooper@aclu-wa.org, changro@seattleu.edu, Nakata, Kelly
Kelly.Nakata@seattle.gov, Litfin, Jennifer M Jennifer.Litfin@seattle.gov, Johnson, Marisa Marisa.Johnson@seattle.gov,
Ann Trivett ann@christielawgroup.com, megan@christielawgroup.com, Laura Pfeifer laura@christielawgroup.com

CB

Received.  We will respond substantively next week. Thank you.

---

**From:** Gilbert, Carolyn S. (Perkins Coie) <CarolynGilbert@perkinscoie.com>
**Sent:** Thursday, September 24, 2020 3:46 PM
**To:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Cc:** Boies, Carolyn <Carolyn.Boies@seattle.gov>; Bob Christie
<bob@christielawgroup.com>; Tom Miller <tom@christielawgroup.com>; Perez, David A.
(Perkins Coie) <DPerez@perkinscoie.com>; Molly Tack-Hooper <mtackhooper@aclu-
wa.org>; changro@seattleu.edu; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Litfin,
Jennifer M <Jennifer.Litfin@seattle.gov>; Johnson, Marisa
<Marisa.Johnson@seattle.gov>; Ann Trivett <ann@christielawgroup.com>;
megan@christielawgroup.com; Laura Pfeifer <laura@christielawgroup.com>
**Subject:** Letter regarding events September 22 and 23

| CAUTION: External Email |
|---|

Hello,

Please see attached letter from counsel for plaintiffs in *Black Lives Matter et al. v. City of
Seattle*, regarding events on September 22 and yesterday, September 23.

Thank you,
Carolyn

**Carolyn Gilbert | Perkins Coie LLP**
ASSOCIATE
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
D. +1.206.359.3279
F. +1.206.359.4279
E. CarolynGilbert@perkinscoie.com

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise
the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank
you.

EXHIBIT B

**From:** Perez, David A. (Perkins Coie) DPerez@perkinscoie.com
**Subject:** BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction
**Date:** September 29, 2020 at 6:30 AM
**To:** Boies, Carolyn Carolyn.Boies@seattle.gov, Sharifi, Ghazal Ghazal.Sharifi@seattle.gov
**Cc:** Bob Christie bob@christielawgroup.com, Tom Miller tom@christielawgroup.com, Molly Tack-Hooper mtackhooper@aclu-wa.org, changro@seattleu.edu, Nakata, Kelly Kelly.Nakata@seattle.gov, Litfin, Jennifer M Jennifer.Litfin@seattle.gov, Johnson, Marisa Marisa.Johnson@seattle.gov, Ann Trivett ann@christielawgroup.com, megan@christielawgroup.com, Laura Pfeifer laura@christielawgroup.com, Gilbert, Carolyn S. (Perkins Coie) CarolynGilbert@perkinscoie.com, John Midgley jmidgley@aclu-wa.org, Nancy Talner TALNER@aclu-wa.org, Arora, Nitika (Perkins Coie) NArora@perkinscoie.com

Carolyn, Ghazal,

We'd like to meet and confer with the City sometime today about Plaintiff's forthcoming motion for contempt. As our letters to you have indicated, the Seattle Police Department is violating the Court's orders in its use of force against demonstrators.

Your responses to us have indicated that the City finds no fault whatsoever with SPD's recent actions. Rather than engage substantively, the City has downplayed our serious concerns, or ignored them altogether.

Given the City's refusal to acknowledge, much less correct, this non-compliance, Plaintiffs reluctantly have concluded that the only path forward is a motion for contempt.

Please let us know your availability for a meet and confer later today.

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

EXHIBIT C

From: **Sharifi, Ghazal** Ghazal.Sharifi@seattle.gov 📎
Subject: RE: BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction
Date: September 29, 2020 at 10:44 AM
To: Perez, David A. (Perkins Coie) DPerez@perkinscoie.com, Boies, Carolyn Carolyn.Boies@seattle.gov
Cc: Bob Christie bob@christielawgroup.com, Tom Miller tom@christielawgroup.com, Molly Tack-Hooper mtackhooper@aclu-wa.org, changro@seattleu.edu, Nakata, Kelly Kelly.Nakata@seattle.gov, Litfin, Jennifer M Jennifer.Litfin@seattle.gov, Johnson, Marisa Marisa.Johnson@seattle.gov, Ann Trivett ann@christielawgroup.com, megan@christielawgroup.com, Laura Pfeifer laura@christielawgroup.com, Gilbert, Carolyn S. (Perkins Coie) CarolynGilbert@perkinscoie.com, John Midgley jmidgley@aclu-wa.org, Nancy Talner TALNER@aclu-wa.org, Arora, Nitika (Perkins Coie) NArora@perkinscoie.com, Sharifi, Ghazal Ghazal.Sharifi@seattle.gov

GS

David,

Good morning. Thank you for your e-mail. Candidly, I am a bit confused by your correspondence below.

First, as to the most recent letter, Ms. Gilbert sent correspondence late last week. Ms. Boies acknowledged receipt of the same on Friday with a promise to respond this week. We have been working on a response and collecting information, that was still coming in late yesterday and early this morning. From reviewing your email, it seems like you actually do not wish for a response to the letter. So I will pause review and work on the same as it appears you have changed your mind about Thursday's request for information.

Second, we have responded to every letter you and your colleagues have sent us. You or your colleagues never sought a meet and confer to follow up on anything in our responses. I am confused about what it is you are claiming we are ignoring or failing to "engage substantively" on.

Third, if your correspondence here is requesting that we admit liability in this litigation or otherwise, then I hope you understand that we cannot do so. Not only are there obvious strategic considerations, it would be contrary to the City's approach to this Order, which has been to take its parameters seriously, repeatedly remind officers of those parameters, and attempt to de-escalate whenever possible. Alternatively, if your correspondence is alluding to the fact that there are not efforts at accountability for individual events or actions, you are patently wrong. We have discussed in prior communications the multi-faceted accountability system and provided you with information about how to communicate concerns regarding incidents which are beyond the scope of the order to allow for investigation and an appropriate management response.

Finally, as to your request for a meet and confer, I am in meetings all day, as is Carolyn. We can be available no sooner than 5:15 for a meet and confer. We can make ourselves available then or sometime tomorrow morning if you wish to provide times for tomorrow am. Thank you.

Best,
Ghazal



**Ghazal Sharifi**
Section Director

Government Affairs
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX: 206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions. If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited. If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it. Thank you.

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, September 29, 2020 6:30 AM
**To:** Boies, Carolyn <Carolyn.Boies@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Cc:** Bob Christie <bob@christielawgroup.com>; Tom Miller <tom@christielawgroup.com>; Molly Tack-Hooper <mtackhooper@aclu-wa.org>; changro@seattleu.edu; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Johnson, Marisa <Marisa.Johnson@seattle.gov>; Ann Trivett <ann@christielawgroup.com>; megan@christielawgroup.com; Laura Pfeifer <laura@christielawgroup.com>; Gilbert, Carolyn S. (Perkins Coie) <CarolynGilbert@perkinscoie.com>; John Midgley <jmidgley@aclu-wa.org>; Nancy Talner <TALNER@aclu-wa.org>; Arora, Nitika (Perkins Coie) <NArora@perkinscoie.com>
**Subject:** BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction

| CAUTION: External Email |
| --- |

Carolyn, Ghazal,

We'd like to meet and confer with the City sometime today about Plaintiff's forthcoming motion for contempt. As our letters to you have indicated, the Seattle Police Department is violating the Court's orders in its use of force against demonstrators.

Your responses to us have indicated that the City finds no fault whatsoever with SPD's recent actions. Rather than engage substantively, the City has downplayed our serious concerns, or ignored them altogether.

Given the City's refusal to acknowledge, much less correct, this non-compliance, Plaintiffs reluctantly have concluded that the only path forward is a motion for contempt.

Please let us know your availability for a meet and confer later today.

David

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

EXHIBIT D

From: **Molly Tack-Hooper** mtackhooper@aclu-wa.org 📎
Subject: RE: BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction
Date: September 29, 2020 at 11:08 AM
To: Sharifi, Ghazal Ghazal.Sharifi@seattle.gov, Perez, David A. (Perkins Coie) DPerez@perkinscoie.com, Boies, Carolyn Carolyn.Boies@seattle.gov
Cc: Bob Christie bob@christielawgroup.com, Tom Miller tom@christielawgroup.com, changro@seattleu.edu, Nakata, Kelly Kelly.Nakata@seattle.gov, Litfin, Jennifer M Jennifer.Litfin@seattle.gov, Johnson, Marisa Marisa.Johnson@seattle.gov, Ann Trivett ann@christielawgroup.com, megan@christielawgroup.com, Laura Pfeifer laura@christielawgroup.com, Gilbert, Carolyn S. (Perkins Coie) CarolynGilbert@perkinscoie.com, John Midgley jmidgley@aclu-wa.org, Nancy Talner TALNER@aclu-wa.org, Arora, Nitika (Perkins Coie) NArora@perkinscoie.com

Ghazal:

Thanks. Let's talk at 5:15. I expect it will be a short call, as it seems that we fundamentally disagree about whether SPD's tactics involving less-lethal weapons are consistent with the Court's orders. If that's not the case, I hope you will let us know when we speak. We of course did not expect the City to admit liability, but we also cannot delay going to Judge Jones any longer given the number of protesters being injured every day.

Here's a number we can use this evening:
   1-888-450-5996
   Participant code: 876825

I will also put this in a calendar invitation momentarily. I look forward to speaking. Thanks for your time.

Best,
Molly

**Molly Tack-Hooper**
Senior Staff Attorney
Pronouns: she, her

American Civil Liberties Union of Washington
P.O. Box 2728, Seattle, WA 98111
206.624.2184 x230 | mtackhooper@aclu-wa.org
www.aclu-wa.org

**From:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Sent:** Tuesday, September 29, 2020 10:44 AM
**To:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>; Boies, Carolyn <Carolyn.Boies@seattle.gov>
**Cc:** Bob Christie <bob@christielawgroup.com>; Tom Miller <tom@christielawgroup.com>; Molly Tack-Hooper <mtackhooper@aclu-wa.org>; changro@seattleu.edu; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Johnson, Marisa <Marisa.Johnson@seattle.gov>; Ann Trivett <ann@christielawgroup.com>; megan@christielawgroup.com; Laura Pfeifer <laura@christielawgroup.com>; Gilbert, Carolyn S. (Perkins Coie) <CarolynGilbert@perkinscoie.com>; John Midgley <jmidgley@aclu-wa.org>; Nancy Talner <TALNER@aclu-wa.org>; Arora, Nitika (Perkins Coie) <NArora@perkinscoie.com>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** RE: BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction

David,

Good morning. Thank you for your e-mail. Candidly, I am a bit confused by your correspondence below.

First, as to the most recent letter, Ms. Gilbert sent correspondence late last week. Ms. Boies acknowledged receipt of the same on Friday with a promise to respond this week. We have been working on a response and collecting information, that was still coming in late yesterday and early this morning. From reviewing your email, it seems like you actually do not wish for a response to the letter. So I will pause review and work on the same as it appears you have changed your mind about Thursday's request for information.

Second, we have responded to every letter you and your colleagues have sent us. You or your colleagues never sought a meet and confer to follow up on anything in our responses. I am confused about what it is you are claiming we are ignoring or failing to "engage substantively" on.

Third, if your correspondence here is requesting that we admit liability in this litigation or otherwise, then I hope you understand that we cannot do so. Not only are there obvious strategic considerations, it would be contrary to the City's approach to this Order, which has been to take its parameters seriously, repeatedly remind officers of those parameters, and attempt to de-escalate whenever possible. Alternatively, if your correspondence is alluding to the fact that there are not efforts at accountability for individual events or actions, you are patently wrong. We have discussed in prior communications the multi-faceted accountability system and provided you with information about how to communicate concerns regarding incidents which are beyond the scope of the order to allow for investigation and an appropriate management response.

Finally, as to your request for a meet and confer, I am in meetings all day, as is Carolyn. We can be available no sooner than 5:15 for a meet and confer.  We can make ourselves available then or sometime tomorrow morning if you wish to provide times for tomorrow am. Thank you.

Best,
Ghazal

**Ghazal Sharifi**
Section Director
Government Affairs
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781

FAX: 206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions. If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited. If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it. Thank you.

---

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, September 29, 2020 6:30 AM
**To:** Boies, Carolyn <Carolyn.Boies@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Cc:** Bob Christie <bob@christielawgroup.com>; Tom Miller <tom@christielawgroup.com>; Molly Tack-Hooper <mtackhooper@aclu-wa.org>; changro@seattleu.edu; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Johnson, Marisa <Marisa.Johnson@seattle.gov>; Ann Trivett <ann@christielawgroup.com>; megan@christielawgroup.com; Laura Pfeifer <laura@christielawgroup.com>; Gilbert, Carolyn S. (Perkins Coie) <CarolynGilbert@perkinscoie.com>; John Midgley <jmidgley@aclu-wa.org>; Nancy Talner <TALNER@aclu-wa.org>; Arora, Nitika (Perkins Coie) <NArora@perkinscoie.com>
**Subject:** BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction

| CAUTION: External Email |
|---|

Carolyn, Ghazal,

We'd like to meet and confer with the City sometime today about Plaintiff's forthcoming motion for contempt. As our letters to you have indicated, the Seattle Police Department is violating the Court's orders in its use of force against demonstrators.

Your responses to us have indicated that the City finds no fault whatsoever with SPD's recent actions. Rather than engage substantively, the City has downplayed our serious concerns, or ignored them altogether.

Given the City's refusal to acknowledge, much less correct, this non-compliance, Plaintiffs reluctantly have concluded that the only path forward is a motion for contempt.

Please let us know your availability for a meet and confer later today.

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293

e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

EXHIBIT E

**Molly Tack-Hooper** mtackhooper@aclu-wa.org  📎

**Subject:** RE: BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction

**Date:** September 29, 2020 at 6:07 PM

**To:** Sharifi, Ghazal Ghazal.Sharifi@seattle.gov, Perez, David A. (Perkins Coie) DPerez@perkinscoie.com, Boies, Carolyn Carolyn.Boies@seattle.gov

**Cc:** Bob Christie bob@christielawgroup.com, Tom Miller tom@christielawgroup.com, changro@seattleu.edu, Nakata, Kelly Kelly.Nakata@seattle.gov, Litfin, Jennifer M Jennifer.Litfin@seattle.gov, Johnson, Marisa Marisa.Johnson@seattle.gov, Ann Trivett ann@christielawgroup.com, megan@christielawgroup.com, Laura Pfeifer laura@christielawgroup.com, Gilbert, Carolyn S. (Perkins Coie) CarolynGilbert@perkinscoie.com, John Midgley jmidgley@aclu-wa.org, Nancy Talner TALNER@aclu-wa.org, Arora, Nitika (Perkins Coie) NArora@perkinscoie.com

MT

---

Ghazal:

Thanks for speaking with us this evening. Plaintiffs will consent to the City filing a response to the motion within 48 hours, rather than 24, and we agree to jointly seek a status conference after the City's initial response is filed to determine additional deadlines and procedures.

Let me know if you have any other questions.

Best,
Molly

---

**From:** Molly Tack-Hooper
**Sent:** Tuesday, September 29, 2020 11:09 AM
**To:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>; Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>; Boies, Carolyn <Carolyn.Boies@seattle.gov>
**Cc:** Bob Christie <bob@christielawgroup.com>; Tom Miller <tom@christielawgroup.com>; changro@seattleu.edu; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Johnson, Marisa <Marisa.Johnson@seattle.gov>; Ann Trivett <ann@christielawgroup.com>; megan@christielawgroup.com; Laura Pfeifer <laura@christielawgroup.com>; Gilbert, Carolyn S. (Perkins Coie) <CarolynGilbert@perkinscoie.com>; John Midgley <jmidgley@aclu-wa.org>; Nancy Talner <TALNER@aclu-wa.org>; Arora, Nitika (Perkins Coie) <NArora@perkinscoie.com>
**Subject:** RE: BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction

Ghazal:

Thanks. Let's talk at 5:15. I expect it will be a short call, as it seems that we fundamentally disagree about whether SPD's tactics involving less-lethal weapons are consistent with the Court's orders. If that's not the case, I hope you will let us know when we speak. We of course did not expect the City to admit liability, but we also cannot delay going to Judge Jones any longer given the number of protesters being injured every day.

Here's a number we can use this evening:
    1-888-450-5996
    Participant code: 876825

I will also put this in a calendar invitation momentarily. I look forward to speaking. Thanks for your time.

Best,
Molly

**Molly Tack-Hooper**
Senior Staff Attorney
Pronouns: she, her

American Civil Liberties Union of Washington
P.O. Box 2728, Seattle, WA 98111
206.624.2184 x230 | mtackhooper@aclu-wa.org
www.aclu-wa.org

---

**From:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Sent:** Tuesday, September 29, 2020 10:44 AM
**To:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>; Boies, Carolyn <Carolyn.Boies@seattle.gov>
**Cc:** Bob Christie <bob@christielawgroup.com>; Tom Miller <tom@christielawgroup.com>; Molly Tack-Hooper <mtackhooper@aclu-wa.org>; changro@seattleu.edu; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Johnson, Marisa <Marisa.Johnson@seattle.gov>; Ann Trivett <ann@christielawgroup.com>; megan@christielawgroup.com; Laura Pfeifer <laura@christielawgroup.com>; Gilbert, Carolyn S. (Perkins Coie) <CarolynGilbert@perkinscoie.com>; John Midgley <jmidgley@aclu-wa.org>; Nancy Talner <TALNER@aclu-wa.org>; Arora, Nitika (Perkins Coie) <NArora@perkinscoie.com>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** RE: BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction

David,

Good morning. Thank you for your e-mail. Candidly, I am a bit confused by your correspondence below.

First, as to the most recent letter, Ms. Gilbert sent correspondence late last week. Ms. Boies acknowledged receipt of the same on Friday with a promise to respond this week. We have been working on a response and collecting information, that was still coming in late yesterday and early this morning. From reviewing your email, it seems like you actually do not wish for a response to the letter. So I will pause review and work on the same as it appears you have changed your mind about Thursday's request for information.

Second, we have responded to every letter you and your colleagues have sent us. You or your colleagues never sought a meet and confer to follow up on anything in our responses. I am confused about what it is you are claiming we are ignoring or failing to "engage substantively" on.

Third, if your correspondence here is requesting that we admit liability in this litigation or otherwise, then I hope you understand that we cannot do so. Not only are there obvious strategic considerations, it would be contrary to the City's approach to this Order, which has been to take its parameters seriously, repeatedly remind officers of those

parameters, and attempt to de-escalate whenever possible. Alternatively, if your correspondence is alluding to the fact that there are not efforts at accountability for individual events or actions, you are patently wrong. We have discussed in prior communications the multi-faceted accountability system and provided you with information about how to communicate concerns regarding incidents which are beyond the scope of the order to allow for investigation and an appropriate management response.

Finally, as to your request for a meet and confer, I am in meetings all day, as is Carolyn. We can be available no sooner than 5:15 for a meet and confer.  We can make ourselves available then or sometime tomorrow morning if you wish to provide times for tomorrow am. Thank you.


Best,
Ghazal

**Ghazal Sharifi**
Section Director
Government Affairs
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.

---

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, September 29, 2020 6:30 AM
**To:** Boies, Carolyn <Carolyn.Boies@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Cc:** Bob Christie <bob@christielawgroup.com>; Tom Miller <tom@christielawgroup.com>; Molly Tack-Hooper <mtackhooper@aclu-wa.org>; changro@seattleu.edu; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Johnson, Marisa <Marisa.Johnson@seattle.gov>; Ann Trivett <ann@christielawgroup.com>; Laura Pfeifer <laura@christielawgroup.com>; Gilbert, Carolyn S. (Perkins Coie) <CarolynGilbert@perkinscoie.com>; John Midgley <jmidgley@aclu-wa.org>; Nancy Talner <TALNER@aclu-wa.org>; Arora, Nitika (Perkins Coie) <NArora@perkinscoie.com>
**Subject:** BLM v. Seattle: Request to Meet and Confer re City's non-compliance with

**Subject:** BLM v. Seattle: Request to Meet and Confer re City's non-compliance with Preliminary Injunction

| CAUTION: External Email |
| :---: |

Carolyn, Ghazal,

We'd like to meet and confer with the City sometime today about Plaintiff's forthcoming motion for contempt.  As our letters to you have indicated, the Seattle Police Department is violating the Court's orders in its use of force against demonstrators.

Your responses to us have indicated that the City finds no fault whatsoever with SPD's recent actions.  Rather than engage substantively, the City has downplayed our serious concerns, or ignored them altogether.

Given the City's refusal to acknowledge, much less correct, this non-compliance, Plaintiffs reluctantly have concluded that the only path forward is a motion for contempt.

Please let us know your availability for a meet and confer later today.

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

EXHIBIT K

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-KING
COUNTY, ABIE EKENEZAR, SHARON
SAKAMOTO, MURACO KYASHNA-
TOCHA, ALEXANDER WOLDEAB,
NATHALIE GRAHAM, and ALEXANDRA
CHEN,

                     Plaintiffs,

v.

CITY OF SEATTLE,

                     Defendant.

NO. 2:20-cv-00887

DECLARATION OF CAPTAIN MATT ALLEN

I, MATT ALLEN, hereby declare as follows:

    1.    I am over the age of 18 years old and am a citizen of the United States. I have personal knowledge of the facts set forth herein and am competent to testify to them at trial.

    2.    I am a Captain with the Seattle Police Department West Precinct. I began my career with the Seattle Police Department ("SPD") in 1991. During my time with SPD, I have held various positions with the Department, including working Patrol Operations at the North, East and South Precincts, SWAT, and most recently, the Crisis Intervention Team Commander. I have extensive

DECLARATION OF
CAPTAIN MATT ALLEN - 1

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    experience working across the Department and with local, state and federal law enforcement and

2    other officials on various complex projects and contributed to changes in SPD's Crisis Intervention

3    policy.

4         3.      This declaration is not intended to be an exhaustive description of my actions or

5    observations from the September 23, 2020 demonstration events described below.    This

6    declaration is intended to provide the Court with information pertinent to the Plaintiffs' arguments

7    that the City of Seattle violated this Court's Preliminary Injunction. The focus of this declaration

8    will be on events of September 23, 2020.

9         4.       In summarizing the declaration below, I relied on my memory, field notes, the

10   Incident Action Plan, department emails, and the Seattle Police Operations Center ("SPOC") log

11   to assist me in writing.

12        5.       On September 23, 2020, I received a department-wide email advising that a

13   decision from the Jefferson County (Kentucky) Grand Jury regarding the Breonna Taylor case was

14   expected to be presented that day, and it was anticipated that demonstrations would occur

15   throughout the day and evening as a result.  I received information of two "Justice For Breonna

16   Taylor" protests scheduled for 1900 hours that evening.  One was being held at Cal Anderson Park

17   (located at 1635 11 Ave) and the other was being held at Westlake Park (located at 401 Pine St.).

18   Additionally, there was a separate rally scheduled for 1900 hours at Broadway Ave and E. Pine

19   St., called "Solidarity Against Political Repression."

20        6.       That morning, Assistant Chief Mahaffey advised that I would be the Incident

21   Commander for the evening.

DECLARATION OF
CAPTAIN MATT ALLEN - 2

7.      At some point, I received information that, according to the protest organizers and/or social media chatter, the protest at Westlake Park was supposed to be a peaceful candlelight vigil for Breonna Taylor and the protest at Cal Anderson was for those looking to engage in more direct action.

8.      During roll call, I explained, among other things, our response plan/rules of engagement if we observed any acts of violence and/or significant property damage.  If there were acts of violence or significant property destruction, our plan was to respond by identifying, isolating, and arresting the offenders if/when it was safe and feasible, so that those activities were not allowed to corrupt the lawful conduct of others.  If/when I determined it was no longer safe or feasible to hold people personally accountable for criminal conduct and/or the crowd presented an imminent risk to public safety or significant property destruction appeared likely, then I would issue dispersal orders and we would use coordinated crowd control tactics that are consistent with law, policy, and training to restore order.  This includes consistency with this Court's Orders.

9.      I began monitoring the demonstration events from my department-issued vehicle with Lieutenant Brooks and Sergeant Chartrand in my vehicle.

10.      Per the SPOC Log, at approximately 1921 hours there were about one hundred people gathered at Westlake Park.  Also per the SPOC Log, at approximately 1923 hours, there were about sixty to eighty people in Cal Anderson Park heading eastbound on Olive, likely towards the East Precinct.  At about this same time, we learned that the group at Westlake Park was associated with the Every Day March (EDM) and the group at Cal Anderson appeared to be associated with "Black Bloc."  "Black Bloc" is known to be associated with the anarchist

DECLARATION OF
CAPTAIN MATT ALLEN - 3

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  movement wherein people dress in black from head to toe to help conceal their identities from law

2  enforcement during large demonstrations.

3      11.     Per the SPOC Log, by approximately 2017 hours, I advised Radio that there were

4  two hundred people in the Cal Anderson group and another two hundred people in the Westlake

5  Park group.  The Cal Anderson group was moving southbound on Broadway Ave. and then

6  westbound on Madison St.  My vehicle followed behind the group and as we drove southbound on

7  Broadway Ave. between Pike St. and Madison St.

8      12.     Per the SPOC Log, at approximately 2029 hours, people in the Cal Anderson group

9  were throwing rocks at the Amazon Go store (located at 1122 Madison St.), and Lieutenant Brooks

10 directed the Third Watch Task Force personnel to follow two blocks behind with their emergency

11 lights activated.  Meanwhile, we were advised that the Westlake Park group was headed eastbound

12 on Olive St.  At about the same time, we received information that people in the Cal Anderson

13 group were committing property destruction at the Starbucks located at 1101 Madison St.  The Cal

14 Anderson group then continued heading westbound on Madison St., with several support vehicles

15 trailing behind them.  My concern at that time was to be able to safely and effectively respond to

16 any further acts of significant property damage

17     13.     Per the SPOC Log, at approximately 2038 hours we received information that the

18 Cal Anderson group was planning an attack on SPD and preparing for arrest.  They were reportedly

19 waiting until they arrived at 5th Ave and Madison St.  Per the SPOC Log, at approximately 2042

20 hours a splinter group was planning to turn northbound on 4th Ave. from Madison and then double-

21 back to attack SPD.

DECLARATION OF
CAPTAIN MATT ALLEN - 4

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

14.     Per the SPOC Log, at approximately 2045 hours, additional reports of property damage came in.  Based on the significant damage I had observed at the Starbucks on Madison St., coupled with the additional information of property damage, I used the public address system in my vehicle to issue immediate dispersal orders in an effort to restore order and maintain public safety. At approximately 2047 hours, the group turned southbound to face the police.  In response, the SPD bicycle officers reportedly got on a line to move the group forward.  At approximately 2050 hours, I advised Radio that I had issued multiple dispersal orders when the group was just north of 4th Ave and Spring St. due to the property damage.

15.     Per the SPOC Log, at approximately 2052 hours officers were reportedly taking rocks, meaning people were throwing rocks at them.  Moments later, someone announced there was property damage at the University of Washington Book store located at 1319 4th Ave.  Based on the property damage, coupled with the reported assaults against the officers, I issued additional dispersal orders via the PA system in my car.  We continued moving the crowd northbound on 4th Ave. to try to prevent them from assaulting officers further or committing additional property destruction.  It is harder (though not impossible) for violent individuals in the crowd to mount an effective attack when continuously on the move.

16.     The Cal Anderson group eventually turned eastbound on Pike St. from 4th Ave.  Per the SPOC Log, at approximately 2057 hours there was a suspect throwing rocks, and Lieutenant Dyment had eyes on the perpetrator (meaning he was observing him), and the Task Force personnel moved in for the arrest.

DECLARATION OF
CAPTAIN MATT ALLEN - 5

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

17.     Per the SPOC Log, at approximately 2057 hours I notified Radio that I gave an additional dispersal order at 5th Ave. and Pike St.  Given the property destruction and violence against officers, we continued moving the group eastbound on Pike St.  The group then turned southbound on 6th Ave.  Meanwhile, the Westlake Park group was reportedly gathered in front of the Federal Court House.  At approximately 2102 hours, someone from the group threw a bottle at officers at 6th Ave. and University St., but thankfully did not hit anyone.  We continued to follow behind the group, but they made it difficult by throwing countless traffic cones, signs, and other loose objects into our path.

18.     At approximately 2117 hours, the Task Force Officers shut off their sirens so the bicycle officers could hear their radios better.  At about this same time, we relocated to the parking lot of the Shell gas station located on the northeast corner of Broadway Ave. and Pike St.  From that vantage point, I observed the Cal Anderson group marching northbound on Broadway Ave., cross Pike St., and continue heading up the minor grade towards Pine St.  The bicycle officers were trailing well behind the group, and the Patrol Task Force officers were behind the bicycle officers.

19.     As the Cal Anderson group continued towards Pine St., we received information that the group was preparing to turn around and attack officers, as discussed earlier. Per the SPOC Log, at approximately 2121 hours we received information from our Intel personnel that the group was talking about "doing some cooking."  I did not know what that meant exactly, but it was concerning given there had been numerous protests over the past several months wherein individuals have thrown large fireworks at officers resulting in injuries and other times people

DECLARATION OF
CAPTAIN MATT ALLEN - 6

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   have thrown Molotov Cocktails at officers and SPD facilities; specifically the East Precinct.  At

2   approximately 2122 hours we learned that the Cal Anderson group were returning to Cal Anderson

3   Park where they planned to readjust for ten minutes before heading to the East Precinct.  While

4   the group was in Cal Anderson Park we remained in the area to monitor.

5       20.     At approximately 2153 hours, the Cal Anderson group marched through the

6   neighborhood, and some people were shining flashlights into homes.  The group continued

7   marching around and eventually ended up heading southbound on Broadway Ave. from Thomas

8   St.  We trailed behind the group without our emergency equipment activated, monitoring for any

9   further acts of violence or property damage.  As the group continued southbound on Broadway

10  Ave., I observed several individuals separate from the larger body and do something to the

11  plywood covering the windows at the Bank of America located at 230 Broadway Ave E.  I

12  suspected they were doing graffiti and when we drove by, I observed graffiti on said location.  I

13  broadcasted the information but did not make a note of what the graffiti said.

14      21.     Per the SPOC Log, at approximately 2222 hours the Cal Anderson group was

15  reportedly putting up an umbrella wall toward the front of the crowd. I do not have a memory of

16  hearing this broadcast, however, this is concerning for the following reasons.  In this context,

17  protesters typically are not using their umbrellas due to inclement weather but rather to conceal

18  whatever activity is occurring behind them.  Alternatively, umbrellas have been used to thwart law

19  enforcement's efforts to effectively deploy OC pepper spray and/or blast balls, when necessary, to

20  stop assaultive behavior and/or significant property damage.  Finally, some umbrellas used during

21  protests may have long pointy tips that can cause pain and/or injury if/when officers attempt to

DECLARATION OF
CAPTAIN MATT ALLEN - 7

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    push past them.  Umbrella clusters may be used to create a shield wall to obstruct officers'

2    movements. The wall may also hinder officers' ability to see, engage, and/or avoid being struck

3    with objects.

4        22.    Per the SPOC Log, at approximately 2232 hours the Cal Anderson group was

5    moving to 11th Ave and E. Pine St. and a smaller contingent gathered by the East Precinct Sally

6    Port.  Lieutenant Brooks, Sergeant Chartrand, and I were at 10th Ave. and E. Pine St. monitoring

7    the group and noticed people were moving signs, boards, a dumpster, and seemingly anything else

8    they could find, into the intersection.  We received information that they were waiting for people

9    from the Westlake Park group to join them.  We observed people arriving in the area and join the

10   group at 11th Ave. and E. Pine St.  At approximately 2242 hours, we estimated there were about

11   two hundred people in the crowd.  SPD personnel continued to monitor from a distance to avoid

12   conflicts.

13       23.    Per the SPOC Log, at approximately 2244 hours someone threw a firework into the

14   East Precinct Sally Port, but thankfully there were no reported injuries at that time.  The Sally Port

15   is secured with a metal retractable gate, but it is not a solid gate.  There are slats so one can clearly

16   see into the Sally Port area.  The person who discharged the firework was identified and observed

17   by officers.

18       24.    At approximately 2250 hours, I gave two warnings via the PA system in my car to

19   stop launching pyrotechnics at the precinct as they were causing a public safety hazard.  At some

20   point, we asked via Radio if there were any officers present in the Sally Port when the firework

21

DECLARATION OF
CAPTAIN MATT ALLEN - 8

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  detonated, and we were told yes.  Per the SPOC Log, officers' ears were injured during the firework

2  blast.

3      25.    Officers still had a visual on the suspect who discharged the firework.  He was still

4  in the 1100 block of Pine St.  At about 2300 hours, I authorized officers to move in and attempt to

5  arrest the suspect.  The bicycle officers led the way and the officers in patrol vehicles were right

6  behind them.  As the officers rounded the corner heading northbound on 12th Ave to westbound

7  on E. Pine St. and started closing in, the suspect managed to escape back into the crowd.  The

8  suspect eventually continued out the other side and fled the area but was apprehended by detectives

9  shortly thereafter.

10      26.    At that point in time, we had bicycle officers facing the crowd at 11th Ave. and E.

11  Pine St.  They were a holding a line so we could get all the Patrol vehicles backed out.  Per the

12  SPOC Log, at approximately 2303 hours officers were reportedly taking glass bottles and beer

13  cans.  It seemed like it took a while, but we eventually got all the patrol vehicles backed away,

14  which left just the bicycle officers backed by SWAT personnel at the line, facing the protesters.

15  SWAT personnel sent a Tahoe to pick-up their teammates, which left just the bicycle officers

16  standing on the line.  The bicycle officers then attempted to break contact but as they turned to

17  leave, some of the individuals in the protest crowd advanced after them.  However, at that time, it

18  looked like they all managed to get away from the protesters.  As described below, an officer was

19  injured.

20      27.    Per the SPOC Log, at approximately 2312 hours we received information that

21  possible Molotov Cocktails were being prepared at the hotdog stand located on the northeast corner

DECLARATION OF
CAPTAIN MATT ALLEN - 9

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

of 11th Ave. and E. Pine St. and that protesters were reportedly setting up fortifications at 11th Ave and E. Pine St. A couple minutes later, protesters were reportedly putting street signs, cones, and debris in the middle of the street.

28. While this was all happening, Sergeant Marion approached our vehicle at 12th Ave. and E. Pine Street. He notified us that one of our officers got struck in the back of the head with a bat by one of the protesters during the above-mentioned tactical withdrawal. We regrouped on 12th Ave and had the Seattle Fire Department respond to treat the officer who got hit in the head with the bat. I met with the officer who was assaulted with the bat to check on his condition and ask him what happened. He explained that they had attempted to arrest the suspect who threw the firework and at some point, he got tripped-up. The crowd started advancing on him and he had to use OC spray to defend himself. He then turned and got hit in the head. Seattle Fire Department (SFD) personnel needed to evaluate him, so I allowed them to do so. While there, I also learned that an officer got struck with a crate. It was unclear to me whether people were saying the assaulted officer got hit with the crate in addition to the bat or if another officer got hit with a crate. While we were in the 1500 block of 12th Ave., numerous protesters rounded the corner at 12th Ave. and E. Pine St. and at least one individual was yelling at us for leaving one of our own behind to be assaulted. The group started proceeding southbound on 12th Ave from E. Pine St. so we all headed southbound to avoid further conflicts.

29. We repositioned ourselves in the 1200 block of E. Pine St., where we met with Lieutenant Dyment. We all faced westbound and monitored the crowd who was still gathered at 11th Ave. and E. Pine St. As we monitored the group from this distance, I noticed persons from

DECLARATION OF
CAPTAIN MATT ALLEN - 10

1  the crowd had started a fire in the roadway. The fire appeared to be situated in the east crosswalk

2  and was growing rapidly to a substantial size. This was concerning, because this intersection is not

3  in a remote area of the city. There are businesses on three of the four corners of that intersection

4  and the one on the southeast corner, that was nearest to the fire, abuts a residential building. I did

5  not know exactly what they were burning, but it was likely the various signs, boards and other

6  material we had witnessed them gathering earlier and I believed the size of the fire posed an

7  immediate risk to public safety. It was not safe nor feasible to wait any longer and allow people

8  more time to build the flames higher, thus I told Lieutenant Brooks I was declaring an unlawful

9  assembly and I directed him to move officers in to safeguard property and restore order by

10 extinguishing the flames and dispersing the crowd to prevent further unlawful and dangerous

11 behavior.

12      30.    Lieutenant Brooks followed my direction and Lieutenant Dyment and A/Lieutenant

13 Moore directed their respective personnel to move in. The bicycle officers led the way with the

14 Patrol Task Force personnel vehicles right behind them. The Patrol Task Force personnel vehicles

15 filled the 1100 block of E. Pine St. and the closest we could get with my vehicle was the northwest

16 corner of 12th Ave. and E. Pine St., where I used the PA system to issue immediate dispersal orders.

17 I set the PA system volume to "9," which is about the loudest it will go without producing loud

18 feedback or squelch.

19      31.    Lieutenant Dyment and A/Lieutenant Moore moved the crowd westbound on Pine

20 St. Per the SPOC Log, at approximately 2348 hours officers reportedly took another bottle, which

21 I understand means someone threw a bottle at them, and munitions were deployed in response.

DECLARATION OF
CAPTAIN MATT ALLEN - 11

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Per the SPOC Log, at approximately 2349 hours a female was reportedly in the crowd with bear

2   spray and moments later officers encountered more rocks and bottles. Additionally, there was a

3   report that an individual in a pink hoodie threw a fire extinguisher at an officer.

4       32.    As the officers moved the crowd westbound on E. Pine St., we eventually

5   repositioned my vehicle to the 900 block of E. Pine St., where I gave additional dispersal orders.

6       33.    At about 2355 hours, we turned the crowd northbound onto Broadway Ave. and

7   continued to keep them moving to prevent them from turning back and mounting further attacks.

8   At about this time, I saw the SWAT team's Bearcat moving northbound on Broadway Ave. just

9   north of E. Pine St. I decided to leave my vehicle and board the Bearcat so I could use its more

10  powerful PA system. Per the SPOC Log, at approximately 2358 hours I issued dispersal orders in

11  the 1000 block of Broadway Ave.

12      34.    Officers continued moving the crowd northbound on Broadway Ave. and then

13  westbound on Denny St. I was trailing behind in the Bearcat giving dispersal orders. Just as I

14  reached Denny St., I looked westbound on Denny St. and observed a loud item explode. I

15  immediately called it out on the Radio as a mortar deployed against the officers, but then I

16  questioned whether it might have been a blast ball. When I did so, someone confirmed that it was

17  in fact a mortar. About this time, there were other reports via Radio that officers were taking

18  bottles and rocks. Per the SPOC Log, at approximately 0013 hours the protesters reportedly had

19  a dumpster and were going to roll it down Boylston Ave. Similar to what we experienced earlier

20  in the evening, people in the crowd were placing various loose items into the roadway to block our

21  path, including but not limited to metal garbage cans and plastic recycle bins. Per the SPOC Log,

DECLARATION OF
CAPTAIN MATT ALLEN - 12

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  at approximately 0023 hours officers were reportedly taking water bottles and moments later rocks,

2  again meaning those items were being thrown at them.

3      35.    As we continued following behind the group, we started encountering additional

4  fires in the roadway, which officers attempted to extinguish using Cold Fire and/or fire

5  extinguishers.  One of these fires got so large we had to summon the fire department.  Later we

6  were informed that there was an individual in the crowd with a blow torch, who was intentionally

7  setting the fires.  The Intel personnel were trying to identify that person's location but I do not

8  believe we ever managed to apprehend them.

9      36.    Per the SPOC Log, at approximately 0030 hours I gave a dispersal order at Belmont

10  Ave. and Pine St.  I had been alternating my announcements between the standard SPD dispersal

11  order and the following statement, "*I am declaring this an unlawful assembly due to Criminal*

12  *Mischief occurring in the crowd.  People are [I explained that people had committed assaults on*

13  *officers, including throwing bottles, rocks, and mortars at them and had set fires in the*

14  *intersections] and we can no longer distinguish them from others to hold them personally*

15  *accountable.  If you are a Legal Observer, Press, a Medic and/or you were here to peacefully*

16  *protest then take this opportunity to leave the area now.*"  At some point, we followed part of the

17  group to the intersection of Bellevue Ave. and Pike St., where I observed an officer deploy a blast

18  ball using an overhand motion.  However, I did not see what precipitated that use of force.

19      37.    Per the SPOC Log, at approximately 0032 hours Lieutenant Brooks advised that a

20  group was westbound from Harvard Ave. and Pike St. and he estimated there were about forty

21  people left.  Per the SPOC Log, at approximately 0034 hours Lieutenant Brooks announced that a

DECLARATION OF
CAPTAIN MATT ALLEN - 13

1  group was down to about thirty people and they were entering Cal Anderson Park. Per the SPOC

2  Log, at approximately 0036 hours someone was reportedly throwing rocks and bottles from the

3  Cal Anderson Park Playfield. The suspect was identified and arrested.

4      38.    Per the SPOC Log, at approximately 0050 there were reportedly twenty to twenty-

5  five protesters following the bicycle officers out of the park. Per the SPOC Log, at approximately

6  0105 hours the situation appeared stable and the Patrol Task Force Units were released back to

7  their respective precincts.

8      39.    While I was outside the East Precinct, I noticed a significant amount of graffiti on

9  the brick wall surrounding the facility. The graffiti included the following: "1312" which I later

10  learned is a cryptic way of saying ACAB, which typically stands for All Cops Are Bastards. There

11  was also "COPS KILL" and "BITCHES" and "BLACK LIVES" and "COWARDS." I asked a

12  Lieutenant about the graffiti and he explained that all of it was new except the word, COWARDS.

13      40.    Throughout our dispersal efforts, I heard numerous radio broadcast regarding

14  people throwing bottles, rocks, and or mortars at officers but given my proximity to the front lines,

15  I do not always see those attacks nor do I always see our officer's responses. I heard various

16  explosive sounds, but it is not always clear whether it was a blast ball or a mortar, especially when

17  I am sitting in my vehicle or the Bearcat and reading the standard SPD dispersal order or the

18  alternative statement noted above via the PA system.

19      41.    On September 24, 2020, at approximately 0108 hours, I was outside the East

20  Precinct when I received a phone call from Assistant Chief Mahaffey. A/C Mahaffey explained

21  that he needed to meet with me at the West Precinct. Upon returning to the West Precinct, I met

DECLARATION OF
CAPTAIN MATT ALLEN - 14

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

with A/C Mahaffey in my office where he instructed me to play a video posted on the SPD Twitter page that was evidently recorded sometime during the Capital Hill protest. The video showed SPD bicycle officers moving forward to address a crowd of protesters in the 900 block of E. Pine St. and an unknown bicycle officer was jogging alongside his or her bicycle before his or her tires ran over the head of a protester who was lying down in the roadway. The video was found here: https://twitter.com/SeattlePD/status/1309030498619060225

42.     Based on my review of the video, it appeared as if the officer may have committed a serious policy violation related to the use-of-force. I contacted Acting Captain Carpenter from the Force Investigation Team ("FIT"), briefed him on the situation, and emailed him the link to the video. He reviewed the video and then called me back. After further consultation with him and A/C Mahaffey, it was decided that FIT personnel would respond to investigate the incident.

43.     At some point, I learned that the subject in the video was arrested for Failure to Disperse and Obstructing a public officer. I viewed photos of the suspect which showed he had some blood on his right elbow and some marks across his face. I was told that when the suspect was asked about the marks on his face, he explained that they were from some type of paint or other item he had on his face that evening. I returned to my office and directed Lieutenant Dyment to have additional photos taken of the subject and have SFD respond to evaluate him. Lieutenant Dyment explained that the subject was not claiming to have any injuries beyond the cut on his elbow and he was getting agitated because he had not been transported to jail yet.

DECLARATION OF
CAPTAIN MATT ALLEN - 15

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

44.     Per FIT Acting Captain Carpenter's directions, I arranged for transport of the bicycle officer to the FIT Office where he would meet A/Captain Carpenter.   The FIT was responding, and I completed my shift.

45.     I later became aware that FIT referred the matter to the Office of Police Accountability ("OPA"). OPA requested an external criminal investigation, which I learned is being conducted by the King County Sheriff's Office.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

SIGNED in Seattle, Washington this 1st day of October, 2020.

_____
CAPTAIN MATT ALLEN

DECLARATION OF
CAPTAIN MATT ALLEN - 16

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

EXHIBIT L

Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JESSICA BENTON, SHELTY BRYANT,
ANNE MARIE CAVANAUGH, ALYSSA
GARRISON, and CLARE THOMAS,

No.    2:20-CV-01174 RAJ

Plaintiffs,

v.

CITY OF SEATTLE,

Defendant.

DECLARATION OF BRYAN GRENON
IN SUPPORT OF CITY'S RESPONSE
TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

I, BRYAN GRENON, hereby declare as follows:

(1) I am over the age of eighteen years and am a citizen of the United States.  I have personal

knowledge of the facts set forth herein and am competent to testify to them at trial.

(2) I am an Assistant Chief of Police with the Seattle Police Department.   My current job duties

include overseeing the Seattle Police Operations Center, known as SPOC.

(3) SPOC is responsible for providing planning assistance and resources to assigned Seattle

Police personnel who will be providing public safety services at protests, demonstrations and

DECLARATION OF BRYAN GRENON - 1 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

events. One of the things that SPOC has helped coordinate is the recitation at demonstration management roll calls of the proper parameters for use of crowd control tools during demonstrations contained in the Orders by Judge Jones, up to and including the August 10, 2020 Order granting the Stipulated Clarification of Preliminary Injunction, collectively known as the "Jones Orders."

(4) SPOC reviews available information regarding upcoming protests and other events. This summer and fall have been an especially active time period for such events. In recent weeks, SPOC has been made aware of around three to four events each day, sometimes more, sometimes less.

(5) SPOC then works with other units at SPD to determine whether it may be necessary to deploy police resources to those demonstration or protest, taking into account factors including crowd size and, importantly, the potential for violence at each event.

(6) For the vast majority of these events, the determination is made that police resources will not need to be deployed and these events occur without SPOC's or SPD's involvement.

(7) Of the events which SPOC identifies as needing police resources to ensure public safety, crowd management tools are not always necessary and are therefore not used at the vast majority of events. To the extent such circumstances present, as set forth and governed by the Jones' Orders, the Seattle Police Department policy is that SPD personnel must follow the Jones' Orders in such deployment, and failure to do so may lead to discipline.

DECLARATION OF BRYAN GRENON - 2 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct to the best of my knowledge and belief.

3

4        DATED this 16th day of October, 2020.

5                                        By: _____
                                              Bryan Grenon
6                                             Assistant Chief of Police

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DECLARATION OF BRYAN GRENON - 3 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200